D. Scott Chang, SBN 146403
Mary J. Hahn*
John P. Relman*
Relman & Dane, PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036-2456
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
schang@relmanlaw.com

M. Julie Patiño, SBN 250375
Ernest Saadiq Morris*
Adam J. Zapala, SBN 245748
Bay Area Legal Aid
2 West Santa Clara Street, 8th Floor
San Jose, CA 95113
Telephone: (408) 283-3700
Facsimile: (408) 283-3750
jpatino@baylegal.org

Attorneys for Plaintiffs

* *pro hac vice* application to be filed

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| AHSAN KHAN and SALEHA KHAN, individually and on behalf of their minor children, IRFAN KHAN, ASIF KHAN, NOREEN KHAN, KAYNAT KHAN, LAIBA KHAN and BILAL KHAN, and REHANA KHAN, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> SAN FRANCISCO HOUSING AUTHORITY, <br><br> Defendant. | Case No.: C-07-6209-MJJ <br><br> **FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF** |

# I. __INTRODUCTION__

1.       Plaintiffs, AHSAN KHAN and SALEHA KAHN, individually and on behalf of their minor children, IRFAN KHAN, ASIF KHAN, NOREEN KHAN, KAYNAT KHAN, LAIBA KHAN and BILAL KHAN, and REHANA KHAN, individually, (collectively, the Khan family) bring this action for injunctive, declaratory and monetary relief against Defendant SAN FRANCISCO HOUSING AUTHORITY (SFHA) under federal and state fair housing laws for otherwise making housing unavailable based on religion and national origin, failing to take immediate, corrective action to prevent discriminatory harassment and intimidation based on religion and national origin, and retaliating against Plaintiffs for attempting to protect their fair housing rights.

2.       The Khan family is of the Islamic faith, and Pakistan is their country of origin. They dress in traditional Muslim attire.  Mr. Khan speaks limited English and cannot read English.  In 2005, the Khans moved into an apartment building owned and managed by SFHA. Like other Muslim tenants of SFHA before them, the Khans quickly became the targets of discriminatory harassment by their neighbors because of their religion and national origin.  This harassment included derogatory comments characterizing them as the terrorist Osama bin Laden and a threatening image spray-painted outside their door depicting a gun pointed at the head of a man dressed in Muslim attire.

3.       In August 2005, the Khans' apartment was broken into.  This was no ordinary burglary.  The perpetrator left clear signs of animus against the Khans' religion and national origin.  Their Pakistani passports were defiled, their traditional clothing was torn to shreds, and their Qur'an was desecrated, thrust into a tin of flour.

4.      The Khans, by themselves and through their counsel, immediately and repeatedly informed SFHA about the hate-motivated nature of this break-in and requested to be transferred from the unit. Despite this notice, SFHA refused the Khans' transfer request for months. Defendant also failed to properly secure the apartment or protect the Khans from further acts of vandalism. As a result, the apartment was repeatedly ransacked after the initial break-in. The Khan family, fearing for their safety, never returned to live in the apartment.

5.      The Housing Authority's callous indifference to the Khans' situation was all the more remarkable because at that time it was subject to a Consent Decree issued by this Court as a result of a settlement in a previous case brought by the Civil Rights Division of the United States Department of Justice alleging that SFHA had engaged in a pattern and practice of discrimination against Muslim tenants. (Exh. 1, Consent Decree, *United States, et al. v. San Francisco Hous. Auth.*, Case No. 02-4540). Specifically, the Department of Justice alleged that SFHA has repeatedly failed to take reasonable steps to prevent or correct discriminatory harassment against tenants based on their race, color, religion or national origin.

6.      Evidence in this earlier case showed that – just as with the Khans – Muslim tenants had been subjected to severe and pervasive harassment by their neighbors who directed ethnic slurs at them, vandalized their property, and broke into their homes. Despite notice of this harassment, SFHA did nothing to address the hostile living environment created by its tenants, and, in particular, failed to provide timely transfers to threatened tenants so they could find new housing in a safer location. At the conclusion of extensive discovery, the parties entered into a Consent Decree, signed by this Court. Among its terms, the Decree provided that the Court would have jurisdiction over SFHA for a period of three years, until January 2007, and mandated

that the Housing Authority quickly process transfer applications and provide priority transfers to tenants subjected to religious or national origin harassment.

7.    Defendant SFHA's blatant failure to take timely steps to protect the Khans and transfer them to a safe apartment in the face of reported allegations of hate-motivated harassment constitutes not simply a violation of their fair housing rights, but also violates the terms of a Consent Decree that was pending at the time the Khans made their concerns known.

8.    As a result of SFHA's callous and reckless disregard for the Khans' federally protected rights, as well as the obligations SFHA specifically agreed to under the terms of the Consent Decree entered into with the Department of Justice and ordered by this Court, the Khans have suffered severe and irreparable injury.  For a significant period of time the Khans were, for all practical purposes, left homeless, desperately searching for housing from friends or acquaintances who could accommodate their large family.  Their need for adequate housing became so severe that Mr. and Mrs. Khan were forced to make the difficult choice of temporarily breaking up their family, sending some of their children to live with extended family in Pakistan. The Khans continue to live in substandard housing conditions, unable to find safe and affordable housing that they would have enjoyed had SFHA complied with the Decree and taken reasonable steps to protect the Khans' fair housing rights.  The Khans have suffered significant financial harm and severe humiliation, embarrassment, and emotional distress in their efforts to keep their family together, pursue a livelihood, and continue their children's education.

9.    In bringing this action, the Khans seek redress for their injuries.  Specifically, the Khans seek injunctive relief requiring SFHA to provide them with the opportunity to rent the first available safe and affordable SFHA apartment in a location of their choice that is

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE, DECLARATORY AND                                  4
MONETARY RELIEF; CASE NO. C-07-6209-MJJ

1  appropriate for their family needs or a voucher; and monetary damages to make them whole for

2  the injuries they have suffered.

3  ## II.  JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

4  10.    Jurisdiction.  This Court has jurisdiction over this action pursuant to 28 U.S.C.

5  § 1331; 42 U.S.C. § 3613(a)(1)(A); and 28 U.S.C. § 1367.

6  11.    Venue.  Venue in this district is proper pursuant to 28 U.S.C. §1391(b).

7  Defendant SFHA is located in the Northern District of California; the events or omissions giving

8  rise to this claim occurred in the Northern District of California; and the property that is the

9  subject of this action is situated in the Northern District of California.

10  12.    Intradistrict Assignment.  Assignment to the San Francisco/Oakland Division is

11  proper pursuant to Civil L.R. 3-2 (c) and (d).  The events or omissions which give rise to this

12  claim occurred in San Francisco County, and the properties that are the subject of this action are

13  located in San Francisco County.

14  ## III.  PARTIES

15  13.    Plaintiffs Ahsan Khan and Saleha Khan are a married couple and, at all times

16  relevant to the complaint, resided with their seven children, Rehana, Irfan, Asif, Noreen, Kaynat,

17  Laiba and Bilal Khan (collectively, the Khan family) in a housing development known as the

18  Potrero Terrace/Annex (Potrero Terrace).  Potrero Terrace is owned and operated by Defendant

19  SFHA and located in the City and County of San Francisco, California.  Irfan Khan, Asif Khan,

20  Noreen Khan, Kaynat Khan, Laiba Khan and Bilal Khan are minors represented herein by their

21  father, Ahsan Khan, and their mother, Saleha Khan.  The Khan family currently lives in Santa

22  Clara, CA.  Mr. Khan and his seven children are citizens of the United States.

14.    Plaintiff Rehana Khan, who is no longer a minor, resided at all times relevant to the complaint with her parents and her siblings in Potrero Terrace. Rehana Khan currently resides with her family in Santa Clara, CA.

15.    Plaintiffs are of the Islamic faith and South Asian (Pakistani) origin and dress in traditional attire.

16.    Defendant SFHA is a corporate and public body established under the laws of the State of California, with its principal place of business in San Francisco, California. As a local federally-subsidized public housing agency, it owns and operates housing developments within the City and County of San Francisco, including the development where Plaintiffs resided, with the purpose of providing decent, safe and sanitary dwellings to persons of low income. At all times relevant to this action, SFHA owned, operated, and managed Potrero Terrace. From January 2004 through January 2007, Defendant SFHA was subject to a Consent Decree of this Court. (*See* Exh. 1, Consent Decree, *United States, et al. v. San Francisco Hous. Auth.*, Case No. 02-4540).

## IV.    FACTUAL ALLEGATIONS

### A.  THE KHANS MOVE INTO POTRERO TERRACE AND ARE TARGETED FOR HARASSMENT

17.    Mr. Khan came to the United States from Pakistan in 1985. His family joined him in the United States in 1997. The Khan family is Muslim, and they wear traditional Muslim clothing. Over the years, Mr. and Mrs. Khan have worked hard to care and provide for their seven children, whose ages range from twins who are four years old to their second oldest daughter who is twenty years old.

18.     In or about May of 2005, Mr. and Mrs. Khan, and their seven children, Rehana, Irfan, Asif, Noreen, Kaynat, Laiba and Bilal, moved to a housing development known as Potrero Terrace that is owned and operated by SFHA.

19.     Almost immediately after they moved into their rental unit, the Khans became the target of acts of harassment and intimidation.  For example, the day after the Khan family moved into the complex, another tenant said to Mr. Khan, "Ah, we have Osama Bin Laden living with us," or words to that effect.

20.     A couple of weeks later, a threatening image was painted near their apartment. The graffiti depicted a gun pointed at the head of a man with a long beard wearing a traditional Muslim headdress.  The Khan family believed that this was a threat of violence against Mr. Khan, who wears a traditional headdress and has a long beard.

21.     Approximately two weeks later, the Khans were again targeted with graffiti outside of their apartment door.  Vulgar words were painted on the wall next to the Khan family's front door.  Defendant left these vulgar words up on the wall, forcing the Khan family to walk past them every time they entered and exited their apartment.

**B.  THE KHANS' QUR'AN AND TRADITIONAL MUSLIM CLOTHING ARE VANDALIZED AND THEIR APARTMENT IS BURGLARIZED**

22.     A few weeks later, on or about August 28, 2005, the Khans left their apartment to spend the day with family friends.  When the Khans came home later that day, they found their apartment had been ransacked and many of their personal possessions gone.  It quickly became apparent that this break-in was a hate crime perpetrated against the Khans because of their religion and national origin.  Their Qur'an was desecrated by being shoved in cooking flour.

Several pieces of their traditional clothing were torn to shreds, and their Pakistani passports were defaced and thrown outside. The Khans were frightened and believed that the perpetrator(s) might physically attack them. The Khans immediately called the police.

23.    The police discovered that the perpetrator(s) had used a crawl space behind the interior wall of the Khan family's living room to enter the apartment; this crawl space had not been properly secured by Defendant.

## C. THE KHANS' EFFORTS TO OBTAIN A TRANSFER FROM SFHA

24.    That night, terrified that the person or persons who had broken into their apartment might return, the Khan family took temporary shelter with their friends in Santa Clara County.

25.    The following morning, Mr. Khan, accompanied by his friend, Sikander Rajput, spoke with the manager of the apartment complex to report that someone had broken into his family's apartment the previous evening. Mr. Khan told the manager that he believed the perpetrator targeted his family based on their religion and national origin. Mr. Khan explained that the perpetrators destroyed their traditional clothing, tore their Pakistani passports and defiled their holy book, the Qur'an. Mr. Khan requested that his family receive an emergency housing transfer to move out of the development.

26.    Mr. Khan's report of this crime and request for relocation was met with the same indifference and inaction that SFHA has shown to Muslim tenants in the past. The manager told Mr. Khan that "this happens all the time" or words to that effect. The manager gave Mr. Khan a standard transfer form and told him to fill it out. The manager told Mr. Khan that a police report was "required" to process the transfer. Mr. Khan again told the manager that

he urgently needed a transfer because his family was afraid to return to an unsecured apartment. The manager told him that if he needed a "rush" he could go to SFHA headquarters, and make a request for a transfer.   Mr. Khan's friend, Mr. Rajput, completed the transfer request for Mr. Khan and they submitted it to the manager.

27.    The same day, Mr. Khan, again accompanied by his friend, Mr. Rajput, went to the main office of SFHA and spoke with a SFHA employee and his supervisor to request a priority transfer.  Mr. Khan informed SFHA that his family had been victims of a hate crime based on their religion and national origin at Potrero Terrace.  SFHA told Mr. Khan that no action would be taken by their office until they received the transfer request from Potrero Terrace and that they needed to review the police report.

28.    Over the next few days, Mr. Khan repeatedly contacted the manager of Potrero Terrace to check on the status of their transfer request and ask that their apartment be secured. Still afraid to return to their apartment to sleep or live, the Khan family continued to seek emergency shelter with friends.

29.    Despite Mr. Khan's requests, SFHA failed to make the repairs necessary to their apartment to prevent further vandalism.  The family's home was repeatedly vandalized, with the perpetrators gutting the apartment and carrying away the contents of their home, including furniture and large appliances.

### D. SFHA IS CONTACTED BY COUNSEL FOR THE KHANS AND ADVISED THAT THEY ARE VICTIMS OF A HATE CRIME

30.    Mr. Khan, this time through legal counsel, again sought assistance with his transfer request.  On September 6, 2005, Jean Crawford, an attorney with Bay Area Legal Aid,

telephoned Nanette Sparks, director of the Eligibility Department for SFHA, and informed her that the Khan family had been victims of a hate-motivated burglary. As director of the Eligibility Department, Ms. Sparks was charged with the ultimate responsibility of determining eligibility for transfers, including priority transfers for victims of hate crimes. Ms. Crawford specifically requested that Ms. Sparks grant a priority housing transfer to the Khan family based on the hate-motivated nature of the crime.

31.     Instead of taking immediate action, Ms. Sparks told Ms. Crawford that she had not yet received the Khan family's request for transfer and that she would get back to her once she was able to review the transfer request. Ms. Crawford continued to telephone Ms. Sparks to ask about the status of the Khan Family's transfer request over the next few days.

32.     On September 8, 2005, Ms. Sparks denied the Khan family's transfer request. Despite repeated notification of the hate-motivated nature of the crime, Ms. Sparks determined that the family did not meet the criteria for a priority transfer.

33.     At the time Ms. Sparks denied the Khans' transfer application, SFHA knew or should have known that the Khans had been victims of a hate crime, qualifying them for a priority transfer under the SFHA's own policies and procedures. SFHA's civil rights policy provides that residents will be eligible for a transfer if they have been victims of a hate crime. Ms. Sparks was told by the Khans' attorney that they had been victims of a hate-motivated burglary. Furthermore, the civil rights policy sets forth several indicia of a hate crime, many of which apply to the Khan family. For example, under SFHA's own policies, indicia of a hate crime include: drawings at the scene of an incident; objects used in the crime indicating bias; the victims are members of ethnic/national origin outnumbered by members of another group at the

apartment complex where the incident occurred; and, the victims perceive that the incident was motivated by bias. SFHA's refusal to grant a priority transfer to the Khans is a direct violation of SFHA civil rights policies and procedures and this Court's Consent Decree, which incorporated those policies.

34.     Because Ms. Sparks violated SFHA policy by refusing to provide the Khans with a priority transfer to safe housing, on September 9, 2005, Ms. Crawford informed SFHA's legal counsel that the transfer request had been wrongfully denied. Ms. Crawford again described the indicia of a hate crime to SFHA's legal counsel.

### E. REQUEST FOR GRIEVANCE HEARING AND BELATED OFFER OF HOUSING AT UNSAFE LOCATION

35.     On September 17, 2005, Ms. Crawford requested a grievance hearing. The Khan family waited nearly three weeks for the grievance hearing to take place. While waiting for the hearing, the nine members of the Khan family continued to live in a small cramped apartment.

36.     The grievance hearing was finally held on October 6, 2005. After reviewing the documentary evidence and the statements by the Khan family establishing the hate-motivated nature of the crime, the hearing officer directed the eligibility department to re-evaluate the Khan family's transfer request and consider approving it.

37.     Despite this clear directive from the grievance hearing officer, SFHA unnecessarily delayed its reconsideration the Khan family's transfer request for nearly a full month. During that time, the Khan family continued to reside in a small apartment, desperately needing safe and affordable housing. On November 1, 2005, SFHA notified Mr. Khan that his

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE, DECLARATORY AND
MONETARY RELIEF; CASE NO. C-07-6209-MJJ

name had been placed on a transfer list.  The notice also made an offer of housing, which required the Khan family to accept the offer within 24 hours or be removed from the priority transfer waiting list.  The notice stated that the apartment was not available for immediate move-in.

38.    The housing offered to the Khans was unsafe for Muslim tenants.  Mr. and Mrs. Khan immediately went to view the apartment with the SFHA manager for that property.  The Khans explained to the manager that they had been victims of a hate-motivated burglary based on their religion and national origin and expressed concern for their safety.  The manager warned the Khans that they might face the same problems at the new property.  Concerned that they might be victims of another hate crime, Mr. Khan informed SFHA that they could not accept the apartment.

39.    SFHA refused to make any other offer of housing to the Khan family.  Instead, SFHA issued a written demand for payment of rent for the apartment at Potrero Terrace for the months of September through December 2005.  SFHA knew or should have known that this demand was unwarranted.  SFHA knew that the Khans had not lived in the apartment since the break-in because they feared for their safety.  In fact, SFHA changed the locks on the unit in September without providing the keys to the Khans.  Despite this knowledge, SFHA threatened the Khans with legal action if the rent was not paid within fourteen days.

## F.  PRIOR CONSENT DECREES AGAINST SFHA

40.    The Housing Authority's callous refusal to provide the Khan family with a timely transfer to safe housing after the crime committed against them, which was clearly directed against their religion and national origin, was not an isolated incident or a simple

bureaucratic mistake. It is consistent with the Housing Authority's longstanding pattern of failing to correct a pervasive pattern of harassment against minorities, including Muslim tenants. These failures have repeatedly led to litigation and binding consent decrees requiring SFHA to institute reforms, yet, as exemplified by the Khan family's case, SFHA has done little to change its practices.

41.     In 1998, six Vietnamese-American families brought a class action suit against SFHA alleging that the Housing Authority failed to protect them from national origin-based violence at SFHA apartment complexes. The complaint alleged that SFHA failed to take corrective action despite receiving scores of reports of severe and pervasive harassment against Vietnamese families.

42.     The tenants also charged the Housing Authority with enforcing a "take it or leave it" policy that requires applicants for public housing to accept the first unit offered by SFHA, regardless of whether the unit is at an unsafe location. SFHA enforced this policy even when it knew or should have known that the tenants would be unsafe. One applicant for housing, for example, was offered a unit at a complex from which the Housing Authority had recently removed other Asian tenants because they had been spray-painted and called racial slurs, where a non-Asian tenant warned him it would be unsafe for him to move there, and the air was let out of his tires while he inspected the unit. Like the Khans, this applicant requested that SFHA assign him and his family to a safe unit, which SFHA flatly refused and denied him any housing at all.

43.     In 1999, the parties settled the case, and the consent decree required that SFHA hire a court-appointed monitor for three years to investigate complaints of racial discrimination and harassment and recommend reforms to the agency, among other remedies.

44.      Just three years later, in 2002, the United States Department of Justice (DOJ)
filed a lawsuit alleging that SFHA engaged in a pattern and practice of discrimination by failing
to take steps to protect its residents from discriminatory harassment and intimidation based on
race, color, national origin, and religion, including harassment of tenants of the Islamic faith.
Several Muslim residents of SFHA apartment complexes who were victims of harassment and
violence based on religion and national origin later intervened in the DOJ action.

45.      The Government and the intervenors alleged that for years, Muslim tenants of
various national origins were subjected to harassment and intimidation by other SFHA tenants
based on their religion and national origin.  The harassment included verbal assaults with ethnic
slurs and, similar to the Khan family, targeted burglaries of their apartments and other property.
The Muslim tenants, like the Khans, repeatedly reported the harassment and intimidation to
SFHA, but SFHA failed to take any effective corrective action, just as it failed to respond to the
Khans' complaints of intimidation and harassment.   The Muslim families, like the Khans,
requested priority transfers to escape the hate-motivated harassment and intimidation but, as with
the Khans, SFHA ignored these requests for months, leaving the tenants unsafe in their own
homes.

46.      In January 2004, after extensive investigation and discovery, the United States,
the Muslim tenants and SFHA entered into a Consent Decree requiring SFHA to make numerous
changes to its policies and practices.  The Consent Decree incorporated SFHA's already existing
civil rights policy regarding the reporting and investigation of civil rights complaints and set
forth strict time periods for taking action.  The Consent Decree required that SFHA process
transfer applications for tenants complaining of civil rights violations within ten days. (Exh. 1, at

¶ Part IV.A.)    It also required (1) increased security patrols at certain buildings, including

Potrero Terrace, with the specific purpose of deterring racial, ethnic, or religious violence and

harassment (Exh. 1 at ¶ 8 & n.4); (2) mandatory civil rights training of SFHA personnel,

including all employees of the Department of Eligibility (Exh. 1 at ¶ 15; (3) referral of all claims

of racial or religion-based harassment to the SFHA Office of Fair Housing, which is responsible

for investigating all civil rights complaints (Exh. 1 at Part IV.B); and (4) notice to all employees

of the Department of Eligibility and any employee who has regular contact with tenants of their

obligations under the Consent Decree (Exh. 1, at ¶ 14).  This Consent Decree remained in effect

for three years until January 2007.

### G. THE HOUSING AUTHORITY'S REFUSAL TO PROVIDE THE KHANS WITH A TRANSFER TO SAFE HOUSING VIOLATED THIS COURT'S DECREE

47.    After receiving Mr. Khan's report of the break-in and the vandalization of his

family's Qur'an, passports, and traditional clothing, the SFHA repeatedly failed to take the

actions required under the DOJ Consent Decree.  These failures are particularly troubling

because at the time of the incident with the Khans, the decree had already been in place for nearly

two years, and SFHA and its employees should have been fully aware of its terms.

48.    Under the terms of the Consent Decree, upon learning of the hate-motivated

nature of the break-in, the property manager at Potrero Terrace was required to immediately

report the incident to the SFHA Office of Fair Housing.  The Office of Fair Housing was then

required to conduct an independent investigation into the matter, and SFHA was required to

assist the Khans in identifying the perpetrator.  Upon information and belief, no report was filed,

no investigation was conducted, and no attempt to identify the perpetrator(s) was made.  Instead,

consistent with SFHA's history of indifference to religion and national origin-based harassment of its tenants, the property manager responded to Mr. Khan's report by declaring that "this happens all the time."

49.    SFHA's denial of the Khan family's request for a priority transfer also violated the terms of the Consent Decree. Mr. Khan's legal counsel specifically described the clear indicators that this crime was motivated by the Khans' religion and national origin to Nanette Sparks, Director of the Eligibility Department. Under this Court's Decree, Ms. Sparks should have had notice of the terms of the decree and should have received mandatory civil rights training. As director of the Eligibility Department, Ms. Sparks should have been particularly sensitive to this transfer request because she is ultimately responsible for implementing a crucial aspect of the Decree, namely ensuring that victims of hate crimes, like the Khans, are provided priority transfers to be removed from unsafe living conditions.

50.    Instead, Ms. Sparks denied the Khan family's request for a transfer. As the grievance proceedings revealed, Ms. Sparks had no basis for her decision to deny the Khans' request.

## G.  ADMINISTRATIVE PROCEEDINGS

51.    Unable to obtain safe and affordable housing through SFHA, Mr. and Mrs. Khan filed an administrative complaint on behalf of themselves and their children with the United States Department of Housing & Urban Development (HUD) on April 7, 2006.

52.    HUD conducted an investigation and inexplicably issued a "no probable cause" determination on or about July 19, 2006 based on the unfounded conclusion that the Khans failed to notify SFHA that they had been victims of a hate crime. The investigation completely ignored

the fact that the Khans' attorney told Nanette Sparks, SFHA's Director of the Eligibility and the person in charge of approving priority transfers, that the Khans had been victims of a hate crime. Moreover, the inadequacy of the investigation is highlighted by HUD's failure even to consider the history of similar complaints by Muslim tenants alleging that SFHA failed to protect them from harassment and intimidation, SFHA's departures from their established policies and procedures, and its disregard of the terms of this Court's Consent Decree.

53.     As an additional attempt to seek redress for their injuries without resorting to federal court litigation, the Khans' attorney filed a tort claim with the Housing Authority under Government Code Section 910.  The SFHA summarily rejected this claim with a form letter dated May 3, 2006.

## H. THE KHANS CONTINUE TO SUFFER BECAUSE OF THE SFHA'S DENIAL OF THEIR REQUEST FOR SAFE HOUSING

54.     As a result of Defendant's actions and inactions as herein alleged, the Khan family has suffered, and continues to suffer, loss of housing and personal property.  As a direct legal and proximate cause of the unlawful acts and practices by Defendant and its employees, agents, and officials, Plaintiffs have suffered economic losses, violation of their civil rights, severe emotional and physical distress, humiliation and mental anguish.

55.     Since August 2005, the Khans have been unable to secure safe and affordable housing, despite their diligent efforts, and have been left living in overcrowded and substandard housing.  At first, this family of nine lived with a family friend and then moved into a small apartment in Santa Clara, CA.  This apartment was too small to fit the entire family.  Because of the overcrowded living conditions, Mr. Khan made the painful decision to send his wife and

children back to Pakistan to live with their extended family, breaking up the family for one year.

56.    The Khans had difficulty adjusting to life in Pakistan after living in the United States for nearly a decade. For several of the Khan children, the United States has been the only home they have known. In February 2007, Mrs. Khan and some of the children finally returned to the United States and were reunited with Mr. Khan. The remainder of the family returned to the United States several months later. In addition to the emotional distress caused by their family's separation, this prolonged absence has had significant consequences for the children's education. The children were out of school in the United States for an entire year, leaving them one full grade level behind.

57.    Although now reunited, the Khans still suffer from overcrowded and substandard living conditions. The nine-member Khan family currently lives in a three-bedroom house. Because SFHA refused to provide the Khans with a transfer to safe and affordable housing, the Khans have been forced to live in this single home, which they shared with their eldest daughter, her husband, and their two children until recently.

58.    In doing the acts of which Plaintiffs complain, Defendant, its agents, officials, and employees acted with oppression, fraud and malice, and with willful and conscious disregard for Plaintiffs' rights not to be discriminated against on the basis of their religion or national origin. Defendant, unless enjoined, will continue to engage in the unlawful acts and the pattern or practice of discrimination and unlawful conduct described above.

59.    Plaintiffs have no adequate remedy at law. Plaintiffs now are suffering and will continue to suffer irreparable injury from Defendants' acts and unlawful conduct unless relief is provided by this Court.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE, DECLARATORY AND                              18
MONETARY RELIEF; CASE NO. C-07-6209-MJJ

60.    Because of the continued hardship caused by SFHA's actions, and its refusal to provide the Khans with adequate housing, the Khans are left with no choice but to bring this civil action in federal court seeking injunctive, declaratory, and monetary relief.

## VI.    CLAIMS FOR RELIEF

## A.  FIRST CLAIM FOR RELIEF

### [Federal Fair Housing Act]

61.    Plaintiffs re-allege, and incorporate herein by reference, each and every allegation contained in paragraphs 1 through 60, as if fully set forth herein.

62.    Defendant injured Plaintiffs in violation of the federal Fair Housing Act by:

a.    Otherwise making housing unavailable or denying a dwelling because of religion or national origin, in violation of 42 U.S.C §3604(a);

b.    Discriminating in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of religion or national origin, in violation of 42 U.S.C. §3604(b); and/or

c.    Intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

## B. SECOND CLAIM FOR RELIEF

### [Civil Rights Act of 1866]

### (Asan Khan, Rehana Khan, Irfan Khan, Asif Khan, Noreen Khan, Kaynat Khan, and Bilal Khan v. SFHA)

63.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 60 of the complaint herein.

64.      Defendant interfered with the Plaintiffs' right to hold property free from harassment or intimidation because of their race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982.

## C.  THIRD CLAIM FOR RELIEF

### [California Fair Employment and Housing Act]

65.      Plaintiffs re-allege, and incorporate herein by reference, each and every allegation contained in paragraphs 1 through 60, as if fully set forth herein.

66.      Defendant has injured Plaintiffs in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

 a.      Discriminating because of national origin or religion, in violation of California Government Code §12955(a) including the following discriminatory acts as defined by Cal. Gov. Code § 12927(c)(1):

  (1).      Provision of inferior terms, conditions, privileges, facilities, or services in connection with housing accommodations;

 b.      Otherwise making unavailable or denying housing because of national origin or religion, in violation of Cal. Govt. Code §12955(k); and,

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE, DECLARATORY AND
MONETARY RELIEF; CASE NO. C-07-6209-MJJ

20

c.      Coercing, intimidating, threatening or interfering with any person in the

exercise or enjoyment of, or on account of his having exercised or enjoyed,

rights guaranteed by the Fair Employment and Housing Act, in violation of

Cal. Govt. Code § 12955.7.

## D.  FOURTH  CLAIM FOR RELIEF

### [California Unruh Act]

67.      Plaintiffs re-allege, and incorporate herein by reference, each and every

allegation contained in paragraphs 1 through 60, as if fully set forth herein.

68.      By its actions and failure to act, Defendant discriminated against Plaintiffs by

denying them the full and equal accommodations, advantages, facilities, privileges, or services of a

business establishment because of  their religion and national origin, in violation of the Cal. Civ.

Code § 51, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

(1)      enter a declaratory judgment finding that the foregoing actions of Defendant

violate the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*; and California law;

(2)      enter an injunction directing Defendant and its directors, officers, agents and

employees to take all affirmative steps necessary to remedy the effects of the illegal,

discriminatory conduct described herein and to prevent similar occurrences in the future;

(3)      award compensatory damages to Plaintiffs in an amount to be determined by the

jury that would fully compensate Plaintiffs for the economic loss, humiliation, embarrassment

and emotional distress that has been caused by the conduct of Defendant alleged herein;

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE, DECLARATORY AND                    21
MONETARY RELIEF; CASE NO. C-07-6209-MJJ

(4)    award statutory damages consisting of actual damages but not less than $4,000 to each Plaintiff for each violation of the Unruh Act;

(5)    award Plaintiffs their reasonable attorneys' fees and costs;[1]; and

(6)    order such other relief as this Court deems just and equitable.

                              Respectfully submitted,

Dated: January 4, 2008.


                              ___/S/_____
                              D. Scott Chang
                              Mary J. Hahn*
                              John P. Relman*
                              Relman & Dane, PLLC
                              1225 19th Street, N.W., Suite 600
                              Washington, DC 20036-2456

                              Julie Patiño
                              Ernest Morris*
                              Adam J. Zapala
                              Bay Area Legal Aid
                              2 West Santa Clara Street, 8th Floor
                              San Jose, CA 95113

                              Attorneys for Plaintiffs

                              *pro hac vice application to be filed

---

[1] Plaintiffs seek to recover attorneys' fees solely for time expended by Relman & Dane PLLC. Plaintiffs do not seek recovery of attorneys' fees for Bay Area Legal Aid.

## CERTIFICATE OF SERVICE
## NORTHERN DISTRICT OF CALIFORNIA

I hereby certify that on January 4, 2008, a copy of the foregoing First Amended

Complaint was electronically filed and was served upon the following by mail:

Tim Larsen
San Francisco Housing Authority
440 Turk Street
San Francisco, CA 94102

                                    /S/_____
                                    D. Scott Chang

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE, DECLARATORY AND                    23
MONETARY RELIEF; CASE NO. C-07-6209-MJJ

# EXHIBIT
# 1

1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4                       SAN FRANCISCO/OAKLAND DIVISION

5

6   UNITED STATES OF AMERICA, .              )

7                   Plaintiffs,              )
                                             )
8   and                                      )      **CONSENT DECREE IN FULL**
                                             )      **RESOLUTION OF LAWSUITS**
9   NAJAT AL-ABAS, et. al.                   )
                                             )
10                  Plaintiff-Intervenors,   )
                                             )
11      v.                                   )
                                             )
12  SAN FRANCISCO HOUSING                    )
    AUTHORITY,                               )
13                                           )
                    Defendant.               )
14  _____   )

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                                        02-4540 (CW)

**CONSENT DECREE IN FULL RESOLUTION OF LAWSUITS**

## I.  INTRODUCTION

The United States initiated this action on September 18, 2002, to enforce the provisions of the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq.*  The United States' complaint contains two causes of action: (1) a claim on behalf of Stella and Roosevelt Scott which was referred to the Justice Department pursuant to 42 U.S.C. § 3612(o), and (2) a claim that the San Francisco Housing Authority ("SFHA") has engaged in a pattern or practice of discrimination in violation of 42 U.S.C. § 3614 by failing to take reasonable steps to protect its residents from harassment on the basis of race, color, religion, and national origin.  The SFHA denies these allegations and contends that it has taken effective steps to address and prevent racial, ethnic, and religious harassment against its residents.

On April 24, 2003, a Complaint in Intervention (*Al-Abas, et al. v. San Francisco Housing Authority*) was filed by six Iraqi-Muslim families ("Plaintiffs-Intervenors") pursuant to 42 U.S.C. § 3614(e).  Plaintiffs-Intervenors' First Amended Complaint in Intervention ("FACI") contains two counts.  Count I alleges that SFHA permitted a hostile housing environment to exist that interfered with Plaintiffs-Intervenors' use and enjoyment of their housing in violation of 42 U.S.C. §§ 3604(a) and (b).  Count II alleges that SFHA engaged in a pattern or practice of discrimination in violation of 42 U.S.C. § 3614, by failing to take adequate action to resolve complaints of violence and harassment directed at Iraqi-Muslim residents, and to protect these residents from further harassment and violence.  The SFHA denies the allegations in the FACI.

The United States, the SFHA, and Plaintiffs-Intervenors desire to avoid costly and protracted litigation and agree that the claims against SFHA should be settled without further litigation or an evidentiary hearing.  Therefore, the SFHA, Plaintiffs-Intervenors, and the United States have agreed to the entry of this Consent Decree.

**NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

Consent Decree                                                        02-4540 (CW)

## II. JURISDICTION AND SCOPE

1.      The Court has subject matter jurisdiction over the claims in the civil action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).  The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Decree, after which time the United States' Complaint and the First Amended Complaint in Intervention shall be dismissed with prejudice.

2.      The provisions of this Consent Decree apply to the San Francisco Housing Authority, its employees, officials, and officers, as well as its agents to the extent they act as property managers or provide security services to SFHA developments.[1]

3.      This Consent Decree is a settlement of disputed claims.  The Consent Decree is entered into without any admission whatsoever by SFHA of having engaged in any discriminatory practices proscribed by the FHA or any other federal or state statute or constitutional provision.  Neither the SFHA's agreement to enter into this Consent Decree nor the provisions of the Consent Decree shall be offered or described in any situation or context as constituting a finding, evidence of, or an admission that the SFHA has violated the FHA, or any other statute or constitutional provision.  This provision shall not limit the United States' ability to proffer evidence of the SFHA's non-compliance in any context or situation.  The parties reserve the right to contest the admissibility of such evidence in any context or situation.

//

## III. GENERAL NONDISCRIMINATION PROVISIONS

4.      For the duration of this Consent Decree, the San Francisco Housing Authority shall not act or fail to act with respect to incidents of harassment or violence based on race, color, religion, or

---

[1]      The objective of this clause, in conjunction with other provisions of this Decree,  is to ensure that private management companies and security firms receive notice and are offered appropriate training designed to ensure that they can identify civil rights complaints and understand the necessity of such complaints being referred to the SFHA's Office of Fair Housing.  It is not the intent to require that such companies establish their own separate procedure to handle such complaints.

Consent Decree                                                                02-4540 (CW)

national origin against its residents in a manner that violates any of the following sections of the Fair Housing Act:

        a.     42 U.S.C. § 3604(a) – denying or otherwise making a dwelling unavailable to any person because of race, color, religion, or national origin;

        b.     42 U.S.C. § 3604(b) – discriminating in the terms, conditions or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, national origin; and

        c.     42 U.S.C. § 3617 – coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right protected by the Fair Housing Act.

## IV.  NONDISCRIMINATION POLICIES AND PROCEDURES

    5.    A.    The SFHA will maintain and continue to implement the Civil Rights Policy and the corresponding Manual of Guidelines and Procedures ("Civil Rights Manual"), which were adopted in 2002. (Attached as Exhibit A ).  The SFHA will supplement its policy by adding the following time deadlines to the following provisions of its Manual of Guidelines and Procedures:

        1.1:  report to be made to Office of Fair Housing within two (2) business days of the incident being reported by the tenant to the property management office or other management personnel (excluding maintenance management personnel).

        1.2:  the term "immediately" as used in this section means not later than one business day.

        1.4: the term "immediately" as used in this section means not later than one business day.

        1.5: the term "immediately" as used in this section means not later than one business day.  However, if the tenant leaves a message (as opposed to talking in person with an

Consent Decree

02-4540 (CW)

SFHA employee) the referral shall be made no later than the end of the next business day.  See also ¶ 18 of the Consent Decree.

1.8: the Administrative Report Form shall be completed and placed in the resident's file within fourteen (14) business days of the incident being reported.  The resident will be informed of his/her right to apply for a transfer at the time the report is received by the Office of Fair Housing or a property manager.

Page 16: a term will be added which states that a transfer application request will be responded to within fourteen (14) business days of its receipt by a Property Management Office and ten (10) business days of its receipt by the Eligibility Department.

B.  Within thirty (30) days of the entry of this Decree, the SFHA shall provide a written notice to all entities that manage housing developments for SFHA (including managers of Hope VI developments) or provide security services for SFHA developments which shall inform the entity that it is SFHA policy that they should refer complaints of harassment based on any of the protected classes in the Civil Rights Manual to the SFHA Office of Fair Housing and to otherwise implement the SFHA Civil Rights Policy as directed by the SFHA.  The notice shall also inform the entity that when it is reviewed for contract compliance, the SFHA will assess the degree to which the entity has met this objective.

6.    In the event that the SFHA determines that modification of the Civil Rights Manual is warranted, the SFHA will notify counsel for the United States in writing by overnight mail.[2]  The United States will have thirty (30) days from the date of its receipt in writing of the proposed revisions to the

---

[2]Overnight mail notice will be sent via common carrier to:
Chief, Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
1800 G Street, N.W., Suite 7002
Washington, D.C. 20530

Consent Decree                                          02-4540 (CW)

1    Civil Rights Manual in which to respond to any proposed change(s). If the United States does not

2    object in writing to the SFHA's proposed change(s) within the thirty (30) day time period, the

3    change(s) may be incorporated into the Civil Rights Manual by the SFHA. If the United States objects

4    to the proposed change(s), the change(s) will not be made and the parties will confer in a good faith

5    effort to resolve their differences. If the parties cannot resolve their differences, the matter shall be

6    resolved by the Court.

7        7.    *Dwelling Lease Addendum.* The SFHA shall maintain Sections 13(K) and 13(L) of

8    its current Dwelling Lease, which permit the SFHA to evict a tenant who engages in racial, ethnic, or

9    religious harassment or violence against any other tenant or guest that violates the Fair Housing Act. If

10   a court finds that, as a matter of law, the current SFHA Dwelling Lease does not permit the SFHA to

11   evict a tenant who engages in racial, ethnic, or religious harassment or violence against any other tenant

12   or guest that violates the Fair Housing Act, the SFHA shall notify the United States in writing within ten

13   (10) days. If a court makes such a ruling, the United States and the SFHA shall work to amend the

14   Dwelling Lease to make it explicit that the SFHA may evict a tenant who engages in racial, ethnic,

15   and/or religious harassment or violence that violates the Fair Housing Act and is directed against any

16   other tenant or guest. In addition, if the United States concludes during the term of the Decree that the

17   lease provisions are inadequate with respect to eviction of such tenants, the United States and the

18   SFHA shall negotiate in good faith in an effort to agree on new lease provisions that make it explicit that

19   the SFHA may evict a tenant who engages in such harassment or violence. If the United States and the

20   SFHA are unable to agree on new lease provisions, the matter shall be decided by the Court.

21        A.    The SFHA may seek to evict a tenant for engaging in racial, ethnic, or religious

22                harassment or violence that violates the Fair Housing Act against any other

23                tenant or guest where a preponderance of the evidence supports such a finding.

24                SFHA shall, in its discretion, determine whether the evidence in a particular

25                instance meets this standard and whether an eviction should be sought.

26        B.    Beginning no later than thirty (30) days from the Date of the Decree, the SFHA

27                shall communicate orally and in writing to all SFHA tenants at the time they sign

28

Consent Decree                                          02-4540 (CW)

their lease, and in writing each subsequent year when they re-certify their income and household composition, that race-, national origin-, ethnic-, and/or religious-based harassment or violence that violates the Fair Housing Act and is directed against any other tenant or guest will not be tolerated and that such conduct by any member of the household constitutes a violation of the lease which may result in eviction. At the time tenants sign their lease and each subsequent year when they re-certify, the SFHA will require each tenant to sign a statement certifying that he or she understands and agrees to comply with this eviction policy. This annual certification requirement shall be included in the SFHA's Civil Rights Manual. SFHA will maintain these tenant certifications in the tenant's files. No later than fifteen (15) days from the entry of Decree, SFHA shall provide the United States with the written notice required by this section. If the United States concludes that the notice is inadequate, the parties shall negotiate in good faith in an effort to agree on the notice. If this effort fails, the matter shall be decided by the Court.

C.    The notice described in the preceding paragraph shall be published in English, Spanish, Chinese, Vietnamese, and Arabic, and any other language that is spoken by more than five percent (5%) of the households in a development.

## V. SECURITY

8.    Within six (6) months of the entry of the Decree, the SFHA will develop and implement a plan that has the primary objectives of (a) increasing, to the extent fiscally feasible, the number and frequency of private security patrols or, in the alternative, patrols by the SFPD[3] at Targeted

---

[3]    The parties recognize and agree that the SFHA may cease contracting with private security firms and instead, to the extent fiscally feasible, contract with the SFPD for security services. Such a change, if made, shall not be deemed a violation of this Decree.

Consent Decree                                                          02-4540 (CW)

Developments[4] during non-school hours (3:00 p.m. to 11:00 p.m.) to deter racial, ethnic, and religious violence and harassment, and (b) ensuring communications, as needed but not less than monthly, between private security personnel and property managers, maintenance supervisors, tenants, and tenant organizations relating to the prevention of civil rights violations.  The plan will be developed in consultation with the United States Department of Justice and will require that private security firms use their best efforts to recruit a pool of applicants for assignment to SFHA developments who are fluent in the languages spoken by more than 5% of the tenants at the developments.

9.  The SFHA will use its best efforts to arrange extra security patrols by SFPD at the Targeted Developments; have communications, as needed but no less than monthly, with SFPD officers assigned to Targeted Developments regarding racial, ethnic, and religious violence at those developments; have regular communications with the SFPD's Hate Crimes Unit regarding racial, ethnic, and religious violence and harassment at the Targeted Developments; and coordinate the enforcement responsibilities set forth in the preceding paragraph with the SFPD, to the extent the SFPD is willing to coordinate these responsibilities.

10.  No later than six (6) months from the entry of the Decree, the Management, Services, and Support Department ("MSSD") will have one employee who has skills in basic investigation techniques.  If no employee presently has those skills, training will be provided to ensure that an employee obtains these skills.  The employee will have responsibility for supervising and coordinating the MSSD's participation in the investigation of complaints of harassment, violence, or intimidation that are covered by and subject to the SFHA Civil Rights Manual, including coordination and liaison with the SFHA Office of Fair Housing (OFH), the Development Management Offices, private security firms, and the SFPD.  As set forth in Section VI below, the OFH (not the MSSD) shall have overall responsibility for implementation of the SFHA's Civil Rights Policy and corresponding Civil Rights Manual.

---

[4]    Targeted Developments are Hunter's Point East, Hunter's Point West, Potrero Annex, Potrero Terrace, Westside Courts, Westbrook, Plaza East, Ping Yuen North, Ping Yuen, 939 Eddy Street, Alice Griffith, Sunnydale, Hunter's View, and 320 Clementina.  Other developments may be deemed "Targeted Developments" by agreement of the parties or, upon a showing of good cause, by court order.

Consent Decree                                                      02-4540 (CW)

## VI.  SUPERVISION OF CIVIL RIGHTS COMPLIANCE

11.    The SFHA will continue to maintain and staff an Office of Fair Housing to ensure that the SFHA administers all aspects of its housing free from illegal discrimination.  The head of the Office will report directly to the Executive Director of the SFHA.  Among other things, the OFH will conduct or monitor the progress of all civil rights Administrative Inquiries undertaken pursuant to the procedures set forth in the Civil Rights Manual, whether initiated through complaints, grievances, or transfer requests; conduct meetings between tenants and SFHA staff regarding civil rights incidents; monitor the appropriateness and timeliness of staff responses regarding civil rights enforcement; implement staff training and tenant outreach on civil rights compliance; and conduct site visits to ensure that development management offices are in compliance with all civil rights procedures (e.g., poster display, brochure availability).

12.    No later than six (6) months from the entry of the Decree, at least one employee of the OFH will have completed training in basic investigation techniques.  Thereafter, that employee will be primarily responsible for implementation of the Civil Rights Policy, including responding to and investigating civil rights complaints and attending civil rights-related meetings with staff and tenants scheduled by the development managers.

13.    No later than thirty (30) days from the entry of the Decree, the SFHA will amend the job description of District Directors (or equivalent SFHA personnel with regional oversight over SFHA property managers) to include the responsibility of working with the Office of Fair Housing to oversee compliance with the SFHA's Civil Rights Manual by the property managers and other development staff.

## VII.  NOTICE AND TRAINING

14.    Employee Notice:

A.    The SFHA will send senior executives, property managers, district directors, administrative clerks who work at residential developments, resident trainees, management staff

Consent Decree                                                     02-4540 (CW)

- 9 -

from the Departments of Management Services and Public Housing Operations Department, all employees at the Department of Eligibility, all employees of the Office of Fair Housing and Security Departments, any employee whose primary job duties include regular contact with SFHA tenants, non-SFHA employees working as property managers at Hope VI public housing developments, and all private security firms a notice summarizing ("summary notice") the Consent Decree and an explanation of the SFHA employee's obligations under the Decree. The notice will also inform employees that the performance of their responsibilities related to the implementation of the Civil Rights Policy will be taken into consideration in their performance evaluation.[5] No later than 30 days after the entry of the Decree, the SFHA will provide the United States with the written notice required by this section. If the United States concludes that the notice is inadequate, the parties shall negotiate in good faith in an effort to agree on the notice. If this effort fails, the matter shall be decided by the court. The summary notice will be distributed within 15 days of agreement by the parties on its terms, or within 15 days of the Court's determination of the notice's terms.

B.      The SFHA will require all SFHA employees identified in paragraph 14.A. receiving the notices described above to execute a statement acknowledging that he or she has received, read and understands the notice, and that he or she agrees to act in accordance with the notice, within fourteen (14) days of receipt of the notice. The SFHA will maintain these statements in accordance with the Record Keeping provisions of this Consent Decree.

C.      The performance evaluation of employees identified in paragraph 14.A. shall contain a section covering the employee's performance with respect to his/her obligations under the Civil Rights Policy

D.      The Manual of Guidelines and Procedures shall be amended to require that with respect to employees hereafter assigned to any of the positions set forth in paragraph 14A., the

---

[5]      The parties recognize and agree that adding this provision relating to performance evaluations may require approval of the employees' union. If the union objects, that parties will meet and confer in good faith to resolve the issue.

Consent Decree                                                          02-4540 (CW)

SFHA will comply with the provisions of paragraphs 14.A. and 14.B., above, within fourteen (14) days of the assignment.

E.     No later than thirty (30) days from the entry of the Decree, the SFHA will provide a copy of this Consent Decree and the summary notice to the Chief of the SFPD, the Commanding Officer of the SFPD Hate Crimes Unit, and the Commanding Officer of district police stations serving neighborhoods containing a Targeted Development.

15.     Employee Training:

A.     The SFHA will implement a mandatory Civil Rights Training Program for SFHA employees according to the schedule set forth below.  The training will be tailored to the particular job categories.  The SFHA must submit its Civil Rights Training plans and training materials to the Department of Justice for review.  The purpose of this training is to educate SFHA employees on their particular roles in implementing the requirements of this Consent Decree, the Civil Rights Policy, and the Fair Housing Act.  The SFHA will also offer training to and strongly encourage participation by Hope VI management staff and employees of private security firms which is designed to train individuals on the identification of civil rights complaints and the necessity of referring such complaints to the OFH.

B.     Training for management staff and SFHA staff responsible for civil rights enforcement, including but not limited to senior executives, property managers  (including non-SFHA employees working as property managers at Hope VI public housing developments), district directors, administrative clerks who work at residential developments, management staff from the Departments of Management Services and Public Housing Operations Department, all employees at the Department of Eligibility, all employees of the Office of Fair Housing and Security Departments, any employee whose primary job duties include regular contact with SFHA tenants, and personnel from the private security firms, shall be conducted within three (3) months of the entry of this Decree.

C.     With respect to SFHA employees hereafter assigned to any of the positions set forth in paragraph 15.B, the SFHA will comply with the provisions of paragraph 15.A. within

three (3) months of commencement of the assignment.

D.      The SFHA will require each individual who receives training pursuant to this Consent Decree to sign an attendance sheet which indicates the date and type of training received, and that he/she received and understands the instruction and written materials received during the training.  The SFHA will also request that any non-SFHA employee who receives training sign such an attendance sheet.

E.      No later than six (6) months from the entry of the Decree, the SFHA will develop and implement a department-wide tracking system through which each department head will be able to identify which SFHA employee, who is required to be trained, has been trained and when.

F.      No later than six (6) months from the entry of the Decree, the Director of the Office of Fair Housing shall consult with the Office of Civil Rights at the Boston Housing Authority (BHA) for assistance in improving the investigation, outreach, tracking, filing, and records-keeping methods of the SFHA Office of Fair Housing.

### VIII. TENANT NOTICE AND OUTREACH

16.     *Community Meetings*

A.      No later than three (3) months from the entry of the Decree, and one time per year thereafter for the duration of the Decree, the SFHA will conduct at each of the Targeted Developments a community meeting for all tenants, at which the SFHA will describe its procedures for tenants to report potential civil rights violations; its procedures for tenants to report complaints regarding civil rights enforcement; its procedures for investigating and resolving such complaints; and its civil rights eviction policy.  The SFHA will use its best efforts to encourage a strong turn out for each meeting, and will post conspicuous notices for each meeting in each building in the development no fewer than two weeks before the scheduled date of the meeting.  Such notices will be posted in English, Spanish, Chinese, Vietnamese, and Arabic, and any other language that is spoken by more than five percent (5%) of the

Consent Decree                                                                                    02-4540 (CW)

households of the respective Development.  The SFHA will require its private security firms to participate in the meetings and will also invite and encourage the SFPD to participate.

B. *Tenant Workshops.*  If Plaintiffs-Intervenors or other qualified individuals identify trainers who will provide tenant workshops on violence prevention and diversity issues at the Targeted Developments without any cost or charge to the SFHA, and such trainers are approved by the SFHA, the SFHA will work with tenant associations in an effort to put on the workshop(s).

17. *Publicity Materials.*  No later than forty-five (45) days from the entry of the Decree, the SFHA will develop a brochure describing the SFHA's civil rights policies, including: the Eviction Policy for Civil Rights Violations; the procedures for reporting civil rights incidents to the SFHA including the Civil Rights Complaint Line; the procedures for finding out the status of civil rights complaints filed with the SFHA; and the procedures for filing a HUD administrative complaint.  The brochure will be widely distributed throughout the SFHA; in particular, in rent statements, during new applicant processing, in re-certification packages, at development management offices, and at tenant task force and development community meetings. The Civil Rights Manual will be amended to include the above provisions relating to distribution of the Brochure.   In addition to the brochure, the SFHA shall display a poster at the Development management offices advertising the existence of the Civil Rights Complaint line.  The brochure and the poster will be published in English, Spanish, Chinese, and Arabic, and any other language that is spoken by more than five percent (5%) of the households in the respective development.  Prior to distribution, SFHA will submit the proposed brochure to the Department of Justice for comment and review.  If SFHA and the Justice Department are unable to agree on the language of the brochure, the matter shall be resolved by the Court.

## IX.   SERVICES FOR LIMITED ENGLISH PROFICIENT TENANTS

18.     No later than thirty (30) days from the entry of the Decree, all telephones used to answer the Civil Rights Complaint Line must have the capacity to use a foreign language translation line, and all Office of Fair Housing staff must be trained in the use of the language line service.  At all times,

Consent Decree                                                               02-4540 (CW)

1   the Complaint Line must be answered by Office of Fair Housing Staff, either in person or by voice mail.

2   Messages left on voice mail shall be returned not later than the end of the next business day.  The Civil

3   Rights Manual will be amended to include a requirement that the SFHA maintain a Civil Rights

4   Complaint Line with the capacity to use foreign language translation line.

5

6                    **X.  COMPLIANCE, RECORD KEEPING, AND REPORTING**

7          19.    If, after one (1) year of the entry of this Consent Decree, the United States determines

8   that the SFHA is in material and substantial noncompliance with the terms of this Consent Decree, the

9   United States may seek from the Court a modification of this Consent Decree to appoint an

10  Independent Monitor.  Before filing such motion to appoint an Independent Monitor, the United States

11  will give the SFHA thirty (30) days written notice setting forth in detail the specific provision(s) of the

12  Consent Decree with which the SFHA is allegedly not in compliance, along with a detailed itemization

13  of the grounds for the alleged noncompliance. During this thirty (30) day period, the United States and

14  the SFHA will endeavor in good faith to resolve informally any differences regarding the interpretation

15  of and compliance with the Consent Decree.  If these conciliation efforts fail and if, after a hearing, the

16  Court finds that the SFHA is in material and substantial noncompliance with the terms the Consent

17  Decree, the Court will appoint an Independent Monitor for a period not to exceed the duration of this

18  Consent Decree.  The purpose of the Independent Monitor will be to ensure that this Consent Decree

19  is implemented effectively and to assist the United States in monitoring the SFHA's compliance with the

20  Consent Decree.  The Independent Monitor will report to the United States, the SFHA, and the Court.

21  The duties of the Independent Monitor will be agreed upon by the parties or determined by the Court

22  and the salary, fees, and expenses incurred by the Independent Monitor will be borne by the SFHA.

23  The total salary, fees, expenses, and costs paid by the SFHA for the Independent Monitor shall not

24  exceed sixty thousand ($60,000) dollars per year, provided that if after the initial appointment of the

25

26  Independent Monitor, the United States establishes to the satisfaction of the Court that SFHA has failed

27

28  Consent Decree                                                02-4540 (CW)

                              -  14  -

to take reasonable steps to come into compliance, the Court may order the SFHA to pay in excess of sixty thousand ($60,000) dollars per year for the Independent Monitor.

20.        A. In the event that the Court orders the appointment of an Independent Monitor, the SFHA will propose a person or entity, to be approved by the United States, to serve as Monitor. The SFHA shall submit the name and curriculum vitae of the proposed Monitor to the United States within thirty (30) days of the entry of the Court's order requiring the appointment of a Monitor. The entity proposed as Monitor must have, at a minimum, the following qualifications: (a) substantial work experience in the civil rights field, specifically in the areas of race and ethnicity; and (b) familiarity with public housing. The Monitor selected must be wholly independent of the SFHA.

B.        The selection of the Independent Monitor shall be subject to the approval of the United States. If the United States has any objection to the SFHA's proposed selection, it shall notify the SFHA within twenty (20) days of receipt of the name and curriculum vitae. If no objection is made within the twenty (20) days, the SFHA's candidate shall be appointed. If the United States timely objects and the parties are not able to resolve the dispute through good faith negotiations, the selection of the Independent Monitor shall be made by the Court.

21. If appointed by the Court, the Independent Monitor, after consultation with the United States, shall periodically throughout the term of this Decree, schedule local meetings or teleconferences at times and places designated by the Monitor for the purpose of assessing the progress of the Decree, discussing any outstanding disputes or other issues regarding the Decree's implementation, and devising ways that the Decree's goals can be more effectively achieved.

Consent Decree                                              02-4540 (CW)

22.  Within six months of the appointment of the Independent Monitor and every six months thereafter, the Monitor shall file a report with the Court reporting on the SFHA's compliance with each provision of the Decree.

23.  The Monitor shall have full and direct access to all SFHA employees that the Monitor reasonably deems necessary to carry out the duties assigned to the Monitor by this Consent Decree.

24.  The Monitor shall have full and direct access to all SFHA documents that the Monitor reasonably deems necessary to carry out the duties assigned to the Monitor by this Consent Decree, except as to any such documents protected by the attorney-client privilege. Should the SFHA decline to provide the Monitor with access to a document based on attorney-client privilege, the SFHA shall provide the Monitor and the United States with a log describing the document.

25.  The Independent Monitor shall provide the SFHA with reasonable notice of a request for copies of documents. Upon such request, the SFHA shall provide the Monitor with copies (electronic, where readily available, or hard copy) of any documents that the Monitor is entitled to access under this Consent Decree.

26.    *Fair Housing Complaint Tracking System.*  No later than four (4) months from the entry of the Decree, the SFHA will develop and implement a computerized tracking system for complaints of harassment, intimidation, or violence that are sufficient to trigger an Administrative Inquiry pursuant to the section of the Civil Rights Manual entitled "Identifying a Civil Rights Incident," to assist the Office of Fair Housing in monitoring compliance with the Civil Rights Manual.  The system will provide authorized persons from the Office of Fair Housing, Office of Counsel, Management Services and Support Department, Eligibility Department, Public Housing Department, Security Department, and

Consent Decree                                                                02-4540 (CW)

senior SFHA Management Staff ready access to the status of SFHA Administrative Inquiries into bias

incidents and the ability to track final actions.

27.    The SFHA will maintain the following records throughout the duration of this Consent

Decree:

A.    All records of complaints of violence, harassment, or intimidation that are

sufficient to trigger an Administrative Inquiry pursuant to the section of the Civil Rights Manual

entitled "Identifying a Civil Rights Incident," including transfer requests and grievances, received

by the SFHA  from a SFHA tenant;

B.    All records of investigations conducted by the SFHA into such complaints;

C.    All records of actions taken by the SFHA in response to such complaints;

D.    All records relating to training required by this Consent Decree;

E.    All signed statements, certifications, and attendance sheets required by this

Consent Decree;

F.    All records related to the community meetings and tenant workshops provided

for in this Decree; and

G.    The SFHA will maintain in one file a copy of all transfer requests, organized by

development and date.

28.    The United States Department of Justice will have the opportunity, upon reasonable notice

to inspect and copy the records identified above, for the duration of the Consent Decree.  The SFHA

will produce other records relevant to assessing compliance with the Decree upon the written request of

the United States; provided, that if the SFHA contends that the requested records are not properly

Consent Decree                                                                02-4540 (CW)

subject to production, the parties shall meet and confer in good faith in an effort to resolve the disputed.

If this effort fails, the matter shall be decided by the Court.  The United States will pay reasonable costs associated with the copying of records.

29. *Semi-Annual Compliance Reports.*  Commencing three (3) months after the entry of the Decree, and every six (6) months thereafter for the duration of this Consent Decree, the SFHA will write and deliver a report to the United States Department of Justice and HUD Office of Fair Housing and Equal Opportunity[6] detailing the following information:

A. All records related to complaints of violence, harassment, or intimidation that are sufficient to trigger an Administrative Inquiry pursuant to the section of the Civil Rights Manual entitled "Identifying a Civil Rights Incident," including civil rights priority transfer requests and grievances, received by any SFHA personnel from any SFHA tenant during the reporting period;

B. Any actions taken by the SFHA during the reporting period in response to the

---

[6]   These semi-annual reports to the Department of Justice will be sent by overnight mail via common carrier to:

Chief, Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
1800 G Street, N.W., Suite 7002
Washington, DC 20530

The semi-annual report to HUD FHEO will be hand-delivered to:

Director, Office of Fair Housing and Equal Opportunity
U.S. Department of Housing and Urban Development
450 Golden Gate Ave., 9th Floor
San Francisco, CA 94102

Consent Decree                                    02-4540 (CW)

complaints identified in the preceding paragraph;

        C.     The current status of the complaints identified in subparagraph a above, made during prior reporting periods;

        D.     A summary statement of actions taken by the SFHA with respect to:

- notice to tenants under paragraph 6;
- the development and implementation of the security plan under paragraph 7;
- coordination efforts with the SFPD under paragraph 8;
- training and assignment of an MSSD employee under paragraph 9;
- training and assignment of an OFH employee under paragraph 12;
- giving of employee notices under paragraph 14;
- providing employee training under paragraph 15;
- holding of community meetings and tenant workshops under paragraph 16.
- preparation and distribution of publicity materials under paragraph 17;
- implementation of Complaint Line under paragraph 18; and
- implementation of Fair Housing Complaint Tracking System under paragraph 27.

Any of the above actions which are finally completed in any reporting period do not need to be reported on in subsequent reports.

        E.     A list of eviction actions commenced pursuant to the Housing Authority's anti-

Consent Decree

02-4540 (CW)

harassment civil rights policy;

F.     A list of tenants that the SFHA has decided not to evict pursuant to Section IV(6)(A) and (B) of this Decree, i.e., instances where the SFHA has concluded that a preponderance of the evidence shows that a tenant has engaged in racial, ethnic, and/or religious harassment or violence against any other tenant or guest that violates the Fair Housing Act, but nonetheless has, in its discretion, decided not to seek to evict.

## XI. MONETARY RELIEF FOR ALLEGEDLY AGGRIEVED PERSONS

30. Payments made by the SFHA pursuant to this Section of the Consent Decree are made for purposes of settlement only and shall, in no circumstance whatsoever, be deemed or construed to be an admission or evidence of liability or wrongdoing by the SFHA.

31. SFHA shall pay a total of one-hundred and eighty thousand dollars ($180,000.00) ("Settlement Amount") to resolve the United States' claims and the claims of each and every Plaintiff-Intervenor.

32. Within ten (10) days of the entry of this Decree, the SFHA shall make the payments set forth below. This amount shall be paid by certified check or by trust account check. Prior to and as a condition of receiving the check, each person deemed to be aggrieved by the United States, as set forth below, and each Plaintiff-Intervenor who is to receive a settlement amount through the payment to Bay Area Legal Aid, as set forth below, shall execute and deliver to the SFHA a release that has been agreed upon by the parties. The requirement to execute and deliver a release arises only if a settlement check is tendered.

Consent Decree                                           02-4540 (CW)

| | |
|---|---|
| Roosevelt & Stella Scott | $22,000 |
| Jawad Al-Gazawi | $14,000 |
| Gilda Butler | $20,000 |
| Shenandoah Toomey | $12,000 |
| Aura Espina | $3,000 |
| Ignacio & Teresa Nuno | $14,000 |
| Katie Nelson | $12,000 |
| Norma Fierro | $3,000 |

Bay Areal Legal Aid (to settle the claims of Najat Al-Abas, Banan Al Tuwarish, Abas Al Tuwarish, Hanian Al Tuwarish, Fatima Al Tuwarish, Halima Al Ajeeb, Samira Al Dhewalem, Sadiyah Al Haji, Mona Al Shahbawi, Fazaa Al Tuwarish, Angham Al Zayadi, Hawraa Zaedi, Malak Zaedi, Zabra Zaedi, Ibrahim Zaedi):    $80,000

33.  Within ten (10) days of the entry of this Decree, the SFHA shall deposit twenty thousand dollars ($20,000.00) ("Settlement Fund") in an interest bearing account for the purpose of finally settling all claims of persons, other than those persons named in the preceding paragraph, who are deemed by the United States to be aggrieved persons.  Any interest accruing to the fund shall become a part of the fund and be utilized as set forth herein.  All expenses related to the establishment of the account shall be borne by the SFHA.

34.  The United States shall investigate the claims of allegedly aggrieved persons and, within 180 days from the entry of this Decree, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to the each such persons.  The

Consent Decree                                                02-4540 (CW)

United States will inform the SFHA in writing of its preliminary determinations, together with a copy of a sworn declaration from each allegedly aggrieved person setting forth the factual basis of the claim. The SFHA shall have fourteen (14) days to review the declaration and provide to the United States any documents or information that they believe may refute the claim.

35. After receiving the SFHA's comments, the United States shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the SFHA. When the Court issues an order approving or changing the United States's proposed distribution of funds for allegedly aggrieved persons, the SFHA shall, within 10 days of the Court's order, deliver to the United States checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the amount of the Settlement Fund ($20,000), plus any accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States and the SFHA a release.

36. In the event that less than the total amount in the Settlement Fund including accrued interest is distributed to persons deemed to be aggrieved by the United States, the Court shall distribute the remainder in a manner consistent with the purposes of this Consent Decree and the Fair Housing Act. The SFHA shall make a proposal to the Court regarding disbursal of the remainder of the fund. When the Court issues an order approving or changing the proposed disbursal of funds, the SFHA shall distribute the funds in the manner directed by the Court within twenty (20) days of the Court's determination.

37. The SFHA shall permit the United States, upon reasonable notice, to review any relevant records that may facilitate its determinations regarding the claims of alleged aggrieved persons.

Consent Decree                                                          02-4540 (CW)

## XIII.  TRANSFER OF SFHA TENANT

38.  Within thirty (30) days of the entry of this Decree, the SFHA shall offer Andrea Jones the

opportunity to transfer to a unit outside of the Potrero Annex/Terrace Development.  If Ms. Jones

declines the offer to transfer, the SFHA shall offer Roosevelt and Stella Scott the opportunity to

transfer to a unit no smaller than two-bedrooms in a location approved by the Scotts ("appropriate

unit") within fifteen (15) days of Ms. Jones declining the unit or within sixty (60) days of the entry of this

Decree, whichever comes first; provided that an appropriate unit is available to be offered to the

Scotts.  If no appropriate unit is available within the time periods set herein, the SFHA shall offer the

Scotts the first appropriate unit that thereafter becomes available.

## XIV.  DURATION OF DECREE AND TERMINATION OF LEGAL ACTION

39.  This Consent Order shall remain in effect for three (3) years after the date of its entry,

provided that the terms shall automatically be extended to four years if an Independent Monitor is

appointed..  In addition, in the event that there is a material and substantial failure by the SFHA to

satisfy the terms or provisions of the Consent Decree, the United States may file a motion requesting

that the term of the Consent Decree be extended.  A motion to extend the Consent Decree must be

filed no later than sixty (60) days prior to the expiration of the Consent Decree.  At least thirty (30)

days prior to filing such a motion, the United States and the SFHA shall meet and confer in good faith in

an effort to resolve any allegations of material and substantial noncompliance.

40.  Prior to instituting any court enforcement proceeding or prior to bringing a motion to

extend the term of the Decree, the United States shall provide the SFHA with a written statement that

Consent Decree                                                                02-4540 (CW)

1 details the nature and basis of any dispute relating to the interpretation, implementation, or enforcement

2 of the Decree. The parties shall then meet and confer in good faith in an effort to resolve the dispute.

3 The meet and confer period shall not be less than thirty (30) days.

4

5

6        **XV. RIGHTS OF PLAINTIFFS-INTERVENORS**

7   41. The United States shall meet and confer with Plaintiffs-Intervenors to discuss concerns

8 Plaintiffs-Intervenors have about provisions in this Consent Decree relating to SFHA training,

9 brochures, notices, and proposed changes to the Civil Rights Manual.

10

11   42. This Decree places no obligation on the SFHA to meet or confer with Plaintiffs-

12 Intervenors with respect to the implementation and/or enforcement of the provisions of this Decree.

13   43. The Plaintiffs-Intervenors shall have no right under any circumstances to judicially enforce

14 this Decree or to seek an extension of the Decree. These rights rest solely with the United States.

15

16 Nothing herein shall prevent the Plaintiffs-Intervenors from being witnesses in any proceeding involving

17 the implementation or enforcement of this Decree.

18   44. Plaintiffs-Intervenors shall be entitled to receive the following documents through the

19 United States. The SFHA is not required to provide any of the documents directly to the Plaintiffs-

20 Intervenors or their counsel, but instead will provide the information to the United States in a format

21

22 which segregates the information which the Plaintiffs-Intervenors may obtain hereunder.

23   A.  A semi-annual report showing the number of complaints of harassment, violence, or

24     intimidation covered by and subject to the Civil Rights Manual, the residential development

25     where the complaint arose, and the alleged basis for the harassment or violence, e.g, race,

26

27

28

Consent Decree            02-4540 (CW)

1   religion, national origin.  For example, three complaints from Hunter's View, one based on race,

2   two based on religion.

3     B.  The summary reports provided pursuant to Paragraph 29.D.; and

4     C.  SFHA training, brochures, notices, and changes to the Civil Rights Manual that

5   Plaintiffs-Intervenors have a right to meet and confer about with the United States.

6

7

8          **XV.  TIME FOR PERFORMANCE**

9

10     45.  Any time limits for performance imposed by this Consent Decree may be extended by the

11   mutual written agreement of the parties.

12

13

14   THE PARTIES CONSENT TO THE ENTRY OF THIS CONSENT DECREE AS INDICATED

15   BY THE SIGNATURES OF COUNSEL BELOW:

16   FOR PLAINTIFF UNITED STATES:

17

18   Dated: January 14, 2003

19   KEVIN V. RYAN       R. ALEXANDER ACOSTA
               ASSISTANT ATTORNEY GENERAL

20

21

22              _____/s/_____

23   JOANN M. SMITH      STEVEN H. ROSENBAUM
Chief, Civil Division      Chief

24   450 Golden Gate Av., 10th fl.  JEANINE M. WORDEN
San Francisco, CA 94102   Deputy Chief

25   Tel: (415) 436-7198     ERIC I. HALPERIN
Fax: (415) 436-6748     (CA 198178)

26              DONALD W. TUNNAGE

27

28   Consent Decree          02-4540 (CW)

1

ALBERTO J. RUISANCHEZ
Attorneys

2

Housing and Civil

3

 Enforcement Section – G St.
Civil Rights Division

4

U.S. Department of Justice

5

950 Pennsylvania Avenue, NW
Washington, DC 20530

6

Tel: (202) 353-9706
Fax: (202) 514-1116

7

8

FOR DEFENDANT SAN FRANCISCO HOUSING AUTHORITY:

9

10

Dated: January 14, 2004                    _____/s/_____
                                           HENRY HEWITT, No, 40851

11

ERICKSON, BEASLEY, HEWITT & WILSON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                                    02-4540 (CW)

1  FOR PLAINTIFFS-INTERVENORS, NAJAT AL ABAS, individually and on behalf of her minor
children BANAN AL TUWARISH, ABAS AL TUWARISH, HANIAN AL TUWARISH &
2  FATIMA AL TUWARISH; HALIMA AL AJEEB;SAMIRA AL DHEWALEM; SADIYAH AL
3  HAJI, MONA AL SHAHBAWI; FAZAA AL TUWARISH; ANGHAM AL ZAYADI, individually
and on behalf of her minor children HAWRAA ZAEDI, MALAK ZAEDI, & ZABRA ZAEDI;
4  IBRAHIM ZAEDI:

5  Dated: January 14, 2004                    _____/s/_____
6                                              MINOUCHE KANDEL No. 157098
7                                              BAY AREA LEGAL AID

8
9   :

10

11

12  ORDERED this 16th day of January, 2004.

13
/s/ CLAUDIA WILKEN
14  _____
15  Hon. Claudia Wilken
United States District Court Judge
16

17

18

19

20

21

22

23

24

25

26

27

28
Consent Decree                                          02-4540 (CW)

# San Francisco Housing Authority
# Office of Fair Housing

# MANUAL OF GUIDELINES AND PROCEDURES

San Francisco Housing Authority
## OFFICE OF FAIR HOUSING

## Manual of Guidelines and Procedures

## Table of Contents

❖ Introduction                                           Page 1

❖ Federal, State, and Local Statutes                     Page 2

❖ Confidentiality and Non-Retaliation Policy             Page 3

❖ Identifying a Civil Rights Incident                    Page 4

❖ Civil Rights Information Telephone Line                Page 6

❖ SFHA Response Procedures                               Page 8

❖ Non-Resident Offenders                                 Page 11

❖ Records                                                Page 12

❖ Graffiti Removal                                       Page 13

❖ Community Outreach                                     Page 14

❖ SFHA Public Safety Partnership with SFPD               Page 15

❖ Transfer Requests                                      Page 16

❖ Training and Implementation                            Page 17

❖ Important Telephone Numbers                            Page 18

❖ Appendix 1 – Administrative Report Form                Page 19

❖ Appendix 2 – Log Book Entry Form                       Page 21

❖ Appendix 3 – Fair Housing Act Letter to Residents          Page 22

❖ Appendix 4 – Fair Housing Act Letter to Employees          Page 23

❖ Appendix 5 – Employee Acknowledgment Form          Page 25

## INTRODUCTION

The San Francisco Housing Authority is dedicated to providing quality, public affordable housing. Our goal is to create welcoming, secure communities for families, the elderly and disabled persons. We strive to prevent residents and guests from actions that could be considered civil rights incidents. We work diligently to create positive living environments to enhance the quality of life for our residents.

Each of our developments is a special place, reflecting the rich diversity in the experiences and backgrounds of our residents and the surrounding neighborhoods. We welcome people from many different walks of life and enjoy being a part of their lives in a meaningful way by providing secure, comfortable housing. We encourage, celebrate, and value diversity in our communities.

We take pride in continually working to provide our residents with safe and sanitary housing within their financial means. We make every effort to provide the highest level of customer service and to be a good neighbor. We are a positive influence within the neighborhoods we serve and work to impact positively the lives of our residents and the surrounding communities.

It is the policy and duty of the San Francisco Housing Authority to administer all aspects of its housing without regard to race, color, gender, religion, ethnicity or national origin, disability or sexual orientation. The San Francisco Housing Authority affirms that its Civil Rights Policy and this Manual of Procedures and Guidelines are intended to be a process by which applicants, residents, and their visitors may report and seek redress from alleged threats, harassment, violence or abuse while they are on San Francisco Housing Authority property. Alleged civil rights violations will be promptly reviewed and rapidly addressed.

# FEDERAL, STATE AND LOCAL STATUTES

**Title VI of the Civil Rights Act of 1964** --- No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**Title VIII of the Civil Rights Act of 1968 as Amended in 1988** --- Title VIII of the Fair Housing Act of 1968 makes it unlawful to discriminate in any aspect of the provision of housing on the basis of race, color, sex, national origin, religion, familial status, or disability.

**Section 504 of the Rehabilitation Act of 1973** --- No otherwise qualified person shall, solely by reason of his/her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance. Pursuant to this Act, the SFHA is required to ensure accessibility to qualified persons with handicaps.

**Americans with Disabilities Act of 1990** --- This Act provides a clear and comprehensive national mandate for the elimination of discrimination against persons with disabilities by providing strong enforceable standards addressing discrimination against individuals with disabilities. Pursuant to this Act, the SFHA is prohibited from discriminating against individuals with disabilities and is required to provide disabled persons with reasonable accommodations, unless doing so imposes an undue hardship on the Authority.

**California Fair Employment and Housing Act** --- This Act is similar to the federal law; four additional protected bases: marital status, ancestry, sexual orientation and source of income.

**City of San Francisco Fair Housing Ordinance** --- Article 33 of the San Francisco Police Code prohibits discrimination based on race, religion, color, ancestry, age, sex, sexual orientation, gender identity, disability, place of birth, weight or height, and source of income. The San Francisco Human Rights Commission is mandated to investigate and mediate all complaints.

## CONFIDENTIALITY AND NON-RETALIATION POLICY

Information and documents received during any administrative inquiry conducted by the SFHA shall be kept confidential to the extent required by law. Individuals shall be entitled to copies of their own affidavits or other signed documents. Federal, state and local law enforcement agencies, including civil rights agencies, shall be provided with such information and documents as is authorized by law.

The SFHA will not take retaliatory action against any person for having reported an alleged civil rights violation, or for having aided or encouraged any person to report a civil rights violation, or for having assisted in the investigation of such a report.

3

## IDENTIFYING A CIVIL RIGHTS INCIDENT

When a SFHA employee learns of an incident involving threats, harassment, violence or abuse, he/she should immediately report the incident as set forth in the Response Procedures. The determination as to whether a civil rights incident has occurred shall be made by the Office of Fair Housing in conjunction with local law enforcement agencies.

**Bias Indicators:**     Bias indicators are certain facts and circumstances which, coupled with particular language or behavior, suggest that a potential civil rights violation has occurred. The presence of any one indicator does not necessarily mean that a civil rights violation has occurred, but rather it is an indication that an Administrative Inquiry is required to make a determination.

**Bias Motive:**     Bias motive is hostility, or negative attitude toward, or prejudice against any group or individual due to race, color, national/ethnic origin, religion, gender, sexual orientation or handicap, which is a factor in whole or in part, in the commission of an act. A bias motive can be implied from the presence of one or more of the following list of bias indicators. This is not an exhaustive list.

## BIAS INDICATORS

- ❖ The offender and victim were of different racial, religious, ethnic/national origin, handicap, sexual orientation or gender groups.
- ❖ Bias-related oral comments, written statements or gestures were made by the offender, which indicate his/her bias.
- ❖ Bias-related drawings, markings, symbols or graffiti were left at the scene of an incident or anywhere on or about SFHA property.
- ❖ Certain objects, items, or things which indicate bias were used or left behind by the offender(s).
- ❖ The victim is a member of a racial, religious, ethnic/national origin, handicap, sexual orientation or gender group that is outnumbered by members of another group in the area where the victim lives and/or the incident occurred.
- ❖ The victim was visiting a location where previous civil rights violations had been committed against other members of his/her racial, religious, ethnic/national origin, handicap, sexual orientation or gender group.
- ❖ Victims or witnesses perceive that the incident was motivated by bias.
- ❖ The victim was engaged in activities promoting a racial, religious, ethnic/national origin, handicap, sexual orientation or gender group.
- ❖ The incident coincided with a holiday relating to, or a date of particular significance to a racial, religious, ethnic/national origin, handicap, sexual orientation or gender group.

4

❖ The offender was previously involved in a similar incident or is a member of, or associates with, a hate group.
❖ An historically established animosity exists between the victim's group and the offender's group.
❖ The victim was in the company of, married to, or dating, a member of a targeted group.
❖ The victim has received harassing mail or phone calls or has been the victim of verbal abuse based on his/her affiliation with a targeted group.

The statutes listed on page two (2) and the SFHA Lease Agreement are violated when an Individual, on or about SFHA property, commits or attempts to commit, or participates in the commission of an act, which is motivated by a bias toward any person. The act can be in various forms, and the above list is not intended to include every example of a civil rights violation. For example, an act may include threats, intimidation, harassment, breaking windows, damaging property, physical violence, etc.

# CIVIL RIGHTS INFORMATION LINE

The Office of Fair Housing has established a non-emergency 24-hour Information Line for the reporting of incidents at housing developments. This telephone number must be clearly posted in all development management offices.

The Information Line is not intended to replace the requirement of completing the Administrative Report Form. Residents reporting incidents at the development offices must be referred immediately to the Office of Fair Housing. Development staff should not refer a resident to the Information Line when the incident is reported at the development.

During *regular business hours*, Office of Fair Housing employees shall be responsible for responding to incidents reported through this number. The following procedures shall apply to those calls:

❖ Identify emergency situations and get immediate police assistance if the situation warrants.
❖ Inform the tenant that this is a non-emergency number, and that if immediate police assistance is required they should call 9-1-1.
❖ List the call in the Office of Fair Housing Phone Log. All calls received via this telephone line must be listed in the logbook.
❖ When speaking with the tenant, make arrangements to schedule a personal interview unless the person refuses to identify him/herself.
❖ Inform the tenant of their right to file a complaint with the U.S. Department of Housing and Urban Development (HUD), Fair Housing Enforcement Center, under the Fair Housing Act.
❖ Inform the tenant of the procedures that the SFHA will follow during its administrative inquiry into the incident.
❖ Inform the tenant of the possible relief available if the SFHA administrative inquiry or any Police Department investigation uncovers evidence of a civil rights violation (i.e., obtaining a No Trespass order or Temporary Restraining Order, Emergency Transfer to protect the tenant, eviction of the offender, etc.)

## Procedure During Non-Business Hours

During non-business hours including weekends and holidays, the Authority shall establish a protocol to ensure that the civil rights information line is answered by an appropriately trained person. The following procedures shall apply to calls received during these hours.

- ❖ Identify emergency situations and request immediate police assistance if the situation warrants.
- ❖ Inform the tenant that this is a non-emergency number, and that if immediate police assistance is required they should call 9-1-1.
- ❖ Request the name of the tenant and telephone number and address which will allow the Office of Fair Housing to contact him/her on the next business day.
- ❖ Complete the Civil Rights Telephone Questionnaire, or similar computer data entry.

## RESPONSE PROCEDURES

The Office of Fair Housing of the SFHA will review civil rights violations. The SFHA will conduct an Administrative Inquiry whenever a report is filed and will initiate appropriate civil action against the offender. When appropriate, the report will be referred to the San Francisco Police Department who will conduct a criminal investigation and, where appropriate, will forward its findings to the Office of the District Attorney for criminal prosecution and the Office of the Attorney General for civil injunctive relief.

The SFHA's response to an incident begins when the incident is initially reported to, or observed by, an employee.

1.1     When a tenant alleges he/she has been victimized by a civil rights incident, it shall be reported to the Office of Fair Housing of the SFHA.

1.2     When a SFHA employee observes a civil rights incident, or any graffiti, writing or drawings containing bias indicators on SFHA property, he/she must immediately report the incident to their supervisor or the Housing Manager of the development where the observation was made. Supervisors must immediately report the incident to the Office of Fair Housing.

1.3     When the Office of Fair Housing is notified of a civil rights incident, all procedures contained herein must be followed.

1.4     When a tenant notifies the Property Manager's Office alleging they have been the victim of a civil rights incident, the Housing Manager must immediately notify the Office of Fair Housing.

1.5     If the tenant reports the incident by telephone, the employee taking the call should immediately refer the tenant to the Office of Fair Housing.

1.6     If an incident is reported anonymously, all efforts should be made to encourage the tenant to provide information through which the Office of Fair Housing may contact them. The tenant should be assured that their name would remain confidential.

1.7     In all cases,

&#10070; Identify emergency situations and get immediate police assistance.

8

❖ Complete the SFHA Administrative Report Form and provide a copy to the
tenant reporting the incident.

❖ Inform the tenant of his/her right to file a complaint with the U.S. Department
of Housing and Urban Development (HUD), Fair Housing Enforcement Center.

❖ When possible, assist the tenant in identifying the offender in those cases where
the tenant cannot identify the offender by name.

1.8    When completing the Administrative Report Form, the following guidelines must be
followed:

❖ The Administrative Report Form must be completed for each reported incident.

❖ Every question on the form must be answered to the extent possible.

❖ Only Office of Fair Housing staff members should complete the form.

❖ Place a copy of the Report in the tenant file and provide the tenant with a copy.

❖ When the alleged offender is identified and is a SFHA resident, or guest of a
resident, a private conference with the head of household must be scheduled
within seven (7) days and no later than fourteen (14) days.

❖ Advise the resident of their right to apply for a transfer.

1.9    Making a Log Book entry:

❖ A central logbook will be maintained at the Office of Fair Housing. This log will
record all reported incidents on SFHA property.

❖ The log book must contain the following information:  file number, name,
address and telephone number of the tenant, description of the nature of the
complaint, name and address of the offender(s), if known.

1.10    Upon completion of the Administrative Report Form, the Office of Fair Housing
must:

❖ Conduct an Administrative Inquiry of the facts and circumstances surrounding
the incident and prepare a report detailing the incident including any
recommendations.

❖ The following factors should be considered when conducting the Administrative
Inquiry:

    a)    .The identity of the offender(s).

    b)    The nature of the incident.

    c)    Whether the offender(s) acted with a bias motive or intent.

    d)    Whether the offender has committed prior acts of misconduct.

    e)    Whether there is sufficient evidence supporting defenses.

    f)    Whether reliable and credible witnesses are available.

    g)    Whether there are special hardships or mitigating circumstances.

    h)    Whether the household member who committed the act is of a
young age.

    i)    Whether the tenant took steps to prevent the misconduct.

    j)    Whether the action was taken in response to another incident.

    k)    The seriousness and circumstances of the incident.

l)        Whether it is certain that the offender will not return.

1.11    The Office of Fair Housing is encouraged to consult with the Hate Crimes Unit of the San Francisco Police Department during the inquiry.  In addition, the Office of Fair Housing will act as a liaison between the Housing Manager and the Hate Crimes Unit advising them of progress in the investigation and whether the Hate Crimes Unit confirms the violation of a criminal statute.  The Executive Director, the Deputy Executive Director, the Director of Housing Management, the Housing Manager and the San Francisco Police Department should be kept informed of all developments in the case.

1.12    The Administrative Inquiry must be completed with thirty (30) days of the incident having been reported.

1.12    A copy of the Administrative Inquiry shall be sent to the appropriate Housing Manager.

## NON-RESIDENT OFFENDERS

When the offender(s) is identified but is not a SFHA tenant or member of a tenant's household, the Office of Fair Housing may in addition to the procedures contained herein, request the San Francisco Police Department to issue a No Trespass Notice against the offender.

The Office of Fair Housing may also request that the SFHA Office of General Counsel file a petition requesting the Court to issue a preliminary injunction prohibiting the offender from entering SFHA property.

The Office of General Counsel, where appropriate, will file a complaint pursuant to California law requesting the issuance of a preliminary injunction against the offender.

When the Office of Fair Housing of Housing Managers receive information regarding violations of trespass notices, temporary restraining orders, and preliminary injunctions, they must promptly contact the San Francisco Police Department and request that these orders and notices be enforced.

## RECORDS

The Office of Fair Housing shall act as the central repository for all documents pertaining to alleged violations.  The Office must ensure that a file number is assigned to each case as soon as an incident is reported.

The Office of Fair Housing will maintain a logbook of all complaints of threats, harassment, violence or abuse by tenants or their visitors.

The logbooks will be replaced on January 1 of each year.

The Office of Fair Housing will create and maintain an individual file for each incident containing records; (1) detailing the administrative inquiry of the allegation, including statement of all witnesses and employees interviewed and, (2) describing all actions taken by the SFHA.

The Office of Fair Housing LogBook will record all reported incidents on SFHA property.

Copies of all no trespass notices, temporary restraining orders and preliminary injunctions will be kept on file by the Office of Fair Housing.

The files and all documents associated with the incident shall contain the file number assigned by the Office of Fair Housing.

All records will be preserved for a period of five years following the date of the incident.

12

## GRAFFITI REMOVAL

Whenever an employee observes bias-related graffiti, it must be reported immediately to the management office or the employee's immediate supervisor. The Office of Fair Housing and the San Francisco Police Department must be notified of the incident.

All bias graffiti on SFHA property must be photographed and immediately removed. The Housing Manager remains responsible for ensuring that graffiti is promptly removed.

13

## COMMUNITY OUTREACH

The SFHA will organize community meetings with residents to establish a dialogue regarding civil rights and public safety issues. The Authority will work with community, youth, religious leaders toward the establishing an overall safe environment for all residents. The U.S. Department of Housing and Urban Development will be kept apprised of these outreach efforts. The SFHA will encourage participation from all residents in this program.

## SFHA PUBLIC SAFETY PARTNERSHIP

The San Francisco Police Department remains the city agency responsible for protecting the constitutional rights of every individual, including the residents of the San Francisco Housing Authority developments. The SFPD will continue to be the primary responder to all 9-1-1 calls in all public housing developments.

A public safety partnership has been formed between the San Francisco Police Department and the San Francisco Housing Authority. Its primary purpose is to significantly improve the level of public safety services to the SFHA's public housing developments. This partnership will be formalized in a *Memorandum of Understanding Regarding San Francisco's Public Housing Developments and a Long Term Strategy For Implementing Community Policing between the City of San Francisco and the San Francisco Housing Authority.*

The Office of Fair Housing is responsible for acting as a liaison between the SFHA and the San Francisco Police Department Hate Crimes Unit.

The Office of Fair Housing and the Hate Crimes Unit will periodically conduct a status review of all pending cases.

## TRANSFER REQUESTS

Pursuant to the San Francisco Housing Authority's Admission and Continued Occupancy Policy (ACOP), a SFHA tenant who is the victim of physical harassment and/or extreme or repeated verbal harassment, which cannot be remedied in other ways, such as by SFHA eviction of the people responsible for harassment or other action, may qualify for a transfer to another unit within the development or to another SFHA development, or other appropriate subsidized housing program.

When a tenant requests a transfer due to a civil rights violation, the Administrative Report Form must state that a transfer request based upon alleged civil rights violations has been initiated. Upon receipt, the Eligibility Department will date and time stamp the request, record its receipt in its management information system.

The Office of Fair Housing must complete its Administrative Inquiry within fourteen (14) days after having been notified of the alleged civil rights violation. At least every fourteen (14) days, the Director of Housing Management or his/her designee will review the status of each referral that is still outstanding. When the Deputy Administrator for the Office of Fair Housing determines that the circumstances warrant immediate action regarding a transfer, an emergency session of the Transfer Review Committee will be convened to conduct a review and issue a decision forthwith.

For all transfers alleging civil rights violations, Eligibility staff will provide the Transfer Review Committee with the recommendations of the Office of Fair Housing, as well as the recommendation of the property manager. This may be done by submitting a written report. The Transfer Review Committee will not act upon a transfer without having considered such recommendations.

All transfers remain governed by federal and state law and regulations, the SFHA Admissions and Continued Occupancy Policy and other applicable SFHA Policies and Procedures.

## TRAINING AND IMPLEMENTATION

All SFHA tenants have been advised of the protection afforded to them by the Fair Housing Act. The resident Fair Housing Act letter also reminds tenants the SFHA will take appropriate action, including eviction against any person who harasses, threatens, or abuses any person, or commits an act of violence while on SFHA property. A copy of this letter is attached as Appendix 3. As stated in the letter all tenants are encouraged to report any incident involving a potential violation of their civil rights. New tenants will also be given a similar notice.

An Executive Summary of the Civil Rights Policy and Guidelines and Procedures and transfer procedures will be given to all public housing applicants during Eligibility Department briefing sessions and screening interviews. These summaries shall also be made available at all SFHA management offices. Additionally, a copy of the Civil Rights Policy and the Manual of Guidelines and Procedures shall be available for review by all residents at SFHA management offices.

By the letter attached as Appendix 4, all current SFHA employees have been advised of the Authority's non-discrimination policies and their responsibilities under the Fair Housing Act. New employees will be similarly advised by a letter from the Executive Director at the commencement of employment. Employees in management positions and all persons working in development offices will receive a copy of the Civil Rights Policy and Manual of Guidelines and Procedures. All other employees will receive a summary of the policy. Each employee must sign an acknowledgment form within fourteen (14) days of receipt. The acknowledgment forms are attached as Appendix 5.

The SFHA, in cooperation with the San Francisco Police Department and community-based organizations, will initiate a Civil Rights Training Program. This comprehensive program will focus on identifying, investigating and eliminating civil rights violations with the public housing developments. All current and future SFHA employees will be required to participate in this program or other appropriate civil rights training programs as approved by the U.S. Department of Housing and Urban Development. Upon completion, each employee will be required to sign a statement acknowledging their participation in the program

17

## IMPORTANT TELEPHONE NUMBERS

San Francisco Housing Authority
Office of Fair Housing
1815 Egbert Street, Suite 201
San Francisco, CA 94124
(415) 715-3190
Civil Rights Information Lines:     Chinese:      715-3274
                                    Vietnamese:   715-3275
                                    Russian:      715-3277
                                    Spanish:      715-3276

San Francisco Housing Authority
Office of General Counsel
440 Turk Street
San Francisco, CA 94102
(415) 554-1334

San Francisco Police Department
*24-Hour Emergency,   Dial 9-1-1*
Hate Crimes Unit
860 Bryant Street
San Francisco, CA 94107
(415) 553-1133

San Francisco Human Rights Commission
25 Van Ness Avenue, 8th Floor
San Francisco, CA 94102
(415) 252-2500

San Francisco District Attorney
850 Bryant Street
San Francisco, CA 94107
(415) 553-9530

U.S. Department of Housing and Urban Development
Fair Housing and Equal Opportunity
San Francisco Office
450 Golden Gate Avenue, 9th Floor
(415) 436-6568

State of California Department of Fair Employment and Housing
30 Van Ness Avenue, Suite 3000
(800) 884-1684

*Appendix No. 1*

## ADMINSTRATIVE REPORT FORM
## OFFICE OF FAIR HOUSING

Date of Report_____SFHA File No._____

Development_____

Name of Tenant_____

Address_____

San Francisco, California 941_____    Telephone_____ Race_____

Date of Incident_____

Location of Incident_____

Brief Description of Incident_____

_____

_____

_____

_____

_____

_____

Did the Incident Involve:

1)      Any use of racially or ethnically insulting words?      Yes___      No___
        If yes, please describe:

2)      The commission of physical acts of violence?      Yes___      No___
        If yes, please describe:

19

3)   Intimidation, Coercion, Threats, Harassment?      Yes___      No___
     If yes, please describe:

4)   Writing of Graffiti?                              Yes___      No___
     If yes, please describe:

5)   Breaking of windows?                             Yes___      No___
     If yes, please describe:

6)   Property damage or vandalism:                    Yes___      No___
     If yes, please describe:

7)   Have there been prior incidents involving tenant?  Yes___    No___
     If yes, list dates:

8)   Has the tenant filed prior complaint reports?    Yes___      No___
     If yes, list dates:

9)   Can the offender be identified?                  Yes___      No___
     If yes:  Name_____
              Address_____
              City, State, Zip Code_____
              Motor Vehicle?_____

10)  Is the offender?   Resident___  Guest___  Non-Resident___  Unknown___

11)  Did anyone witness the incident?                 Yes___      No___
     If yes, list name, address of witnesses:

12)  Was the San Francisco Police notified?           Yes___      No___

13)  San Francisco Police Report No.?_____

14)  Has the tenant requested a transfer?             Yes___      No___

15)  Has a private conference been scheduled?         Yes___      No___
     If yes, date_____

Print your name and title_____

Sign your name_____

20

*Appendix No. 2*

San Francisco Housing Authority

<u>*Log, Alleged Civil Rights Violations*</u>

| <u>File No.</u> | <u>Date</u> | <u>Name, Address</u> | <u>Type of Incident</u> | <u>Dispo</u> |
| --- | --- | --- | --- | --- |

*Appendix No. 3*

San Francisco Housing Authority
440 Turk Street
San Francisco, California 94102                    (415) 554-1200

Dear SFHA Resident:

The Federal Fair Housing Act makes it unlawful to discriminate in housing against any person on the basis of race, color, sex, national origin, religion, familial status or handicap. Under the law, all persons have the right to live in any neighborhood and in any housing, free from racial or ethnic harassment.

The San Francisco Housing Authority takes seriously its responsibility under the Fair Housing Act and is strongly committed to protecting its residents from racial and ethnic assaults or harassment. We will not tolerate any threats, harassment, abuse or violence by any person while on SFHA property and we will investigate and prosecute SFHA tenants who engage in such activities. If you believe you have been threatened, harassed, or abused, or that you are the victim of an act of violence, we urge you to report the incident to the San Francisco Police by dialing 9-1-1. If you believe that racial or ethnic considerations played a part in the incident, we urge you to also call the SFHA Office of Fair Housing at 715-3190.

When a complaint is received, we will investigate and we will notify other appropriate law enforcement agencies as necessary. The SFHA and the San Francisco Police will continue to work together to provide a safe environment and quality of life for all public housing residents. If our investigation uncovers evidence of a civil rights violation we will take appropriate measures to protect you, your family, and your guests. There should be no misunderstanding of this important point: *if you, or your guests, visitors, or anyone in your family, threatens, harasses or abuses any person, or commits an act of violence, while on SFHA property, you and your family will be subject to eviction.*

If you have any questions about the Fair Housing Act, or about your responsibilities as a SFHA tenant, you may contact the Office of Fair Housing at 715-3190. You may also call one of the agencies listed on the attached page if you have a question about the State or Federal civil rights laws. I encourage you to consider seriously the importance of this matter.

Sincerely yours,

Gregg Fortner
Executive Director

22

*Appendix No. 4*

San Francisco Housing Authority
440 Turk Street                                    (415) 554-1200
San Francisco, California 94102


TO:          All Employees

FROM:        Gregg Fortner, Executive Director

DATE:

SUBJECT:     Compliance with the Fair Housing Act


All employees of the San Francisco Housing Authority are subject to the terms of the Fair Housing Act enacted by the Congress of the United States. The SFHA is mandated to enforce all federal and state legislation that prohibit discrimination. The scope of the Fair Housing Act is to provide, within constitutional limitations, for fair housing throughout the United States.

This Act provides that no person shall be subject to discrimination because of race, color, religion, sex, handicap, familial status, or national origin in the sale, rental or advertising of dwellings, or in the provision of brokerage services or in the availability of residential real estate-related transactions. There is a personal as well as an institutional liability for noncompliance with the Fair Housing Act and all other applicable Federal and State laws.

The SFHA has developed a Civil Rights Policy to reasonably insure the safety and protection of all tenants and visitors to SFHA developments. A copy (summary) of this Policy is attached. All employees are required to comply with the policies and procedures contained in the Policy. Non-compliance may subject an employee to disciplinary action.

The essential terms of the Fair Housing Act applicable to SFHA employees are as follows:

IT SHALL BE UNLAWFUL:

1.  To refuse to rent after the making of a bona fide offer, or to refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

2.  To discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities therein, because of race, color, religion, sex, familial status, or national origin.

3. To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or any intention to make any such preference, limitation, or discrimination.

4. To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, or rental when such dwelling is in fact so available.

5. For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin.

6. To discriminate in the rental, or to otherwise make unavailable or deny, a dwelling to any renter because of a handicap of that renter, a person residing in or intending to reside in that dwelling after it is so rented, or any person associated with that renter, and to refuse to grant reasonable accommodation to persons with handicaps.

7. To engage in any discriminatory housing practices prohibited by 42 USC Section 3601 et. seq.

8. To coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of fair housing rights, or for having aided or encouraged any other person in the exercise or enjoyment of fair housing rights.

The attached statement signifying you have received, read and understood this Memorandum and the (summary) Civil Rights Policy must be signed and returned to your supervisor no later than _____. Questions concerning the terms of the Fair Housing Act or its applicability to you should be directed to the Office of Fair Housing at 715-3190.

Thank you for your attention.

24

*Appendix No. 5*

San Francisco Housing Authority
440 Turk Street
San Francisco, California 94102                     (415) 554-1200


Date:_____


    I_____, have received and read the attached letter from the Executive Director summarizing the San Francisco Housing Authority's policies of non-discrimination under the Fair Housing Act and Title VI of the Civil Rights Act of 1964.

    I have also received a copy (summary) of the Civil Rights Policy and understand my responsibilities as an employee or agent of the San Francisco Housing Authority under the Policy and the Fair Housing Act.


_____
Print Your Name


_____
Signature


_____
Date


25