KEVIN K. CHOLAKIAN (S.B. # 103423)
VIVIAN L. LERCHE (S.B. # 149984)
CHOLAKIAN & ASSOCIATES
A Professional Corporation
5 Thomas Mellon Circle, Suite 105
San Francisco, CA 94134
Telephone: (415) 467-8200
Facsimile: (415) 467-8206
kcholakian@cholakian.net
vlerche@cholakian.net

Attorneys for Defendant
SAN FRANCISCO HOUSING AUTHORITY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO HOUSING AUTHORITY,<br><br>Defendant. | Case No.: C-02-4540-CW<br><br>**DEFENDANT SAN FRANCISCO HOUSING AUTHORITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF TO RELATE CASES** |

Defendant SAN FRANCISCO HOUSING AUTHORITY ("SFHA") respectfully objects to Plaintiffs' Motion for Administrative Relief upon the ground that *Khan v. San Francisco Housing Authority*, Case No. C-07-6209-CRB (the "*Khan* action"), is <u>not</u> related to the closed case of *United States of America v. San Francisco Housing Authority*, Case No. C-02-4540-CW (the "*DOJ* action"). In particular, SFHA opposes Plaintiffs' Motion and upon the grounds that the cases are not substantially similar; and SFHA was not properly served in accordance with Civil L.R. 7-11(a) and 5-5(a) – (b).

///

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

## ARGUMENT

**A.    The *Khan* Action is Not Substantially Similar to The *DOJ* Action and, thus, the Two Actions are Not Related.**

The *DOJ* action and its Decree were designed to address violent aggression directed by some tenants against other tenants, not the relatively minor acts of unidentified perpetrators claimed by the *Khan* Plaintiffs.

In stark contrast to the incidences that the tenants in the *DOJ* action allegedly underwent, the *Khan* Plaintiffs experienced incidences which were relatively minor in comparison to those allegedly suffered by the plaintiffs in the *DOJ* action.

For example, Stella Scott, a tenant involved in the *DOJ* action, was allegedly assaulted. Additionally, at lease one of her harassers had been identified as a tenant at the SFHA project. (SFHA requests that this Court take judicial notice of the Complaint filed by the United States of America in the *DOJ* action, ¶¶11, 14.) As an additional example, in the First Amended Complaint in Intervention, Plaintiff-Intervener Samira Al Dhewalem alleged that other tenants threw rocks at her home and that her children were attacked by other children who live in the development in an attempt to rip off their traditional Muslim headscarves.  Similarly, Plaintiff-Intervener Mona Al Shahbawi alleged that her unit was stoned and one of her children was chased and stoned by other residents in the complex and, further, one of her daughters was surrounded by other residents of the complex who tried to rip off her headscarf.  (SFHA requests that this Court take judicial notice of the First Amended Complaint in Intervention filed by the Plaintiffs-Interveners in the *DOJ* action, ¶¶19-20; 25.)

Clearly, the tenants in the *DOJ* action were subjected to much more severe and violent harassment than that allegedly experienced by the *Khan* Plaintiffs.  The Consent Decree in the *DOJ* action addresses these issues by including provisions to allow the SFHA to evict tenants who engage in racial, ethnic or religious harassment or violence against any other tenants or their guests.

In contrast, the *Khan* Plaintiffs allegedly experienced a comment likening them to Osama bin Laden and graffiti spray-painted near their door of a man in Muslim attire with a gun pointed

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

2

1   at his head.  None of the alleged perpetrators have been identified. These alleged acts, albeit

2   rude, were facts of life in a public housing project and did not result in any request by the

3   Plaintiffs to be relocated from their residence at Potrero Terrace.

4       Subsequently, Plaintiffs were allegedly burglarized and many of their personal

5   possessions were taken.  Like most burglaries, the perpetrators ransacked the premises and the

6   Plaintiffs' personal property in their quest for items of value to steal.  While this burglary, like

7   all burglaries, is not a small matter, it also does not rise to the harassment and discrimination

8   alleged by Plaintiffs.  They are not victims of a "hate crime" but, instead, they are victims of a

9   crime of opportunity as the unidentified burglars broke in to steal valuable items, including their

10  jewelry, while they were away from the premises.

11      While the burglary was an unfortunate event, it did not constitute an "immediate threat to

12  the life of a member" due to a "hate crime," which is the relevant criteria for a priority transfer.

13  The SFHA did not engage in any discriminatory act by not immediately uprooting this family of

14  nine and relocating them to different premises, particular in light of the fact that a three-story,

15  five-bedroom, apartment cannot be easily located in the City and County of San Francisco.

16  Instead, as the SFHA would have done under the same circumstances if the request for priority

17  transfer had been made by another tenant with a different racial and/or religious background,

18  SFHA rightfully denied the Plaintiffs' request for a priority transfer due to the stated legitimate,

19  non-discriminatory, reason that the alleged incidences did not meet the criteria of an "immediate

20  threat to the life of a member" due to a "hate crime".

21      In essence, the *Khan* Plaintiffs' are not seeking equal treatment here; but rather, the

22  Plaintiffs are seeking preferential treatment in obtaining priority transfers over and before other

23  similarly situated tenants.

24      Indeed, the United States Department of Housing and Urban Development ("HUD")

25  conducted an investigation and issued a "no probable cause" determination on or about July 19,

26  2006 expressly finding that reasonable cause does not exist to believe that a discriminatory

27  housing practice had occurred.  *See*, Declaration of Vivian L. Lerche in Support of Defendant's

28

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

1  Opposition to Plaintiffs' Motion for Administrative Relief to Relate Cases ("Lerche Decl.") ¶3,

2  Ex. "A.")

3      Under these circumstances, the *DOJ* action is not substantially similar to *Khan* action

4  and the Consent Decree issued in the unrelated *DOJ* action does not apply to the claims made by

5  the Plaintiffs herein, as the *DOJ* action and its Decree were designed to address violent

6  aggression directed by some tenants against other tenants, not the relatively minor acts of

7  unidentified perpetrators claimed by the *Khan* Plaintiffs.

8      Moreover, the *DOJ* action is settled and closed.  Therefore, there cannot be an "unduly

9  burdensome duplication of labor and expense or conflicting results if the cases are conducted

10  before different Judges" as required under Civil Local Rule 3-12(a) to define related cases.

11      **B.    Plaintiffs Failed to Timely Deliver Their Motion Papers to SFHA.**

12      Plaintiffs sent SFHA this motion and attachments *by mail*.  Defendant did not receive this

13  motion and attachments until March 12, 2008.  Lerche Decl., ¶4, Ex. "B.")

14      Plaintiffs' counsel declared that he filed this motion electronically.  *See*, Declaration of

15  D. Scott Chang in Support of Plaintiffs' Motion for Administrative Relief, page 3.  In cases

16  subject to electronic filing, where a party has not registered as an ECF user, "when service of a

17  document other than a third-party complaint is required to be made upon a person who is not a

18  registered ECF User, a paper copy of the document shall be served on the person (as otherwise

19  required by the Federal Rules of Civil and Criminal Procedure or the Local Rules)."  United

20  States District Court for the Northern District of California, General Order No. 45, "Electronic

21  Case Filing Guidelines Sec. IX."

22      In the present case, Plaintiffs electronically filed this motion under the *DOJ* action, a case

23  to which counsel for SFHA in the *Khan* action was not registered as an ECF user.  Accordingly,

24  Plaintiffs were required to serve this motion on Defendants as if Defendants were not a

25  registered ECF user in accordance with the Federal Rules of Civil Procedure and the Court's

26  local rules.

27      This Court's Civil Local Rule 3-12(b) states that in bringing a Motion for Administrative

28  Relief, the moving party must comply with Civil L.R. 7-11.  In addition to complying with Civil

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

4

1    L.R. 7-11, a copy of the motion, together with proof of service pursuant to Civil L.R. 5-6, must

2    be served on all known parties to each apparently related action.

3        The party bringing the Motion for Administrative Relief "must deliver the motion and all

4    attachments to all other parties on the same day as the motion is filed." Civil L.R. 7-11(a)

5    [emphasis added.] Delivery to a party may be made by "private or commercial delivery service

6    or electronically, such as by facsimile transmission or electronic mail." Civil L.R. 5-5(a)(1).

7    Furthermore, "service by mail may not be used if a Local Rule requires delivery of a pleading or

8    paper." Civil L.R. 5-5(a)(2).

9        In the present case, Plaintiffs did not comply with Civil L.R. 7-11 or Civil L.R. 5-5(a)(1)

10   regarding appropriate manner of delivery. Plaintiffs filed this motion on March 6, 2008.

11   However, Plaintiffs failed to timely deliver the motion and all attachments to SFHA because

12   they did not fax, email, or personally deliver by courier this motion and all attachments on the

13   same day. Rather, Plaintiffs sent SFHA this motion and attachments *by mail*. Defendant did not

14   receive this motion and attachments until March 12, 2008, two days after opposition was due.

15   Lerche Decl., ¶¶4-5, Ex. "B". Therefore, SFHA could not have filed this opposition by March

16   10, 2008 as contemplated by Civil L.R. 7-11(b) and Fed.R.Civ.P. Rule 6(a). SFHA diligently

17   filed this Opposition upon receipt of the Plaintiffs' motion papers. Lerche Decl., ¶¶6-7.

18                              **CONCLUSION**

19       Plaintiffs' Motion for Administrative Relief should be denied because *Khan v. San*

20   *Francisco Housing Authority*, Case No. C-07-6209-CRB, is not related to the closed case of

21   *United States of America v. San Francisco Housing Authority*, Case No. C-02-4540-CW, as

22   those cases are not substantially similar. Furthermore, SFHA was not properly served with the

23   Plaintiffs' motion papers in accordance with Civil L.R. 7-11(a) and 5-5(a) – (b).

24   DATED:                              CHOLAKIAN & ASSOCIATES

25

26                                By _____

27                                KEVIN K. CHOLAKIAN
                                  VIVIAN LEUNG LERCHE
                                  Attorneys for Defendant
28                                SAN FRANCISCO HOUSING AUTHORITY

1  KEVIN K. CHOLAKIAN (S.B. # 103423)
2  VIVIAN L. LERCHE (S.B. # 149984)
   CHOLAKIAN & ASSOCIATES
3  A Professional Corporation
   5 Thomas Mellon Circle, Suite 105
4  San Francisco, CA 94134
   Telephone: (415) 467-8200
5  Facsimile: (415) 467-8206
6  kcholakian@cholakian.net
   vlerche@cholakian.net
7
   Attorneys for Defendant
8  SAN FRANCISCO HOUSING AUTHORITY

9                  UNITED STATES DISTRICT COURT
10                NORTHERN DISTRICT OF CALIFORNIA
11
   UNITED STATES OF AMERICA,        )    Case No.: C-02-4540-CW
12                                   )
              Plaintiff,             )    **DECLARATION OF VIVIAN L.**
13                                   )    **LERCHE IN SUPPORT OF**
       vs.                          )    **DEFENDANT SAN FRANCISCO**
14                                   )    **HOUSING AUTHORITY'S**
   SAN FRANCISCO HOUSING            )    **OPPOSITION TO PLAINTIFFS'**
15 AUTHORITY,                       )    **MOTION FOR ADMINISTRATIVE**
                                     )    **RELIEF TO RELATE CASES**
16            Defendant.             )
                                     )
17                                   )
                                     )
18                                   )
                                     )
19                                   )
                                     )
20 _____ )

21        I, VIVIAN L. LERCHE, declare as follows:
22        1. I am an attorney licensed to practice in California, and am employed by the law firm of
23  Cholakian & Associates, counsel of record for Defendant SAN FRANCISCO HOUSING
24  AUTHORITY ("SFHA").
25        2. I have personal knowledge of the following facts, and could testify competently under
26  oath concerning them.
27        3. In my capacity as one of the attorneys for SFHA, I have reviewed the claim file and
28  found that the United States Department of Housing and Urban Development ("HUD")

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

                                  1

1  conducted an investigation and issued a "no probable cause" determination on or about July 19,

2  2006 expressly finding that reasonable cause does not exist to believe that a discriminatory

3  housing practice had occurred.  A true and correct copy of the letter determining "no probable

4  cause" to believe that a discriminatory housing practice had occurred is attached hereto as

5  Exhibit "A."

6      4.  Cholakian & Associates did not receive Plaintiffs' Motion for Administrative Relief to

7  Relate Cases until March 12, 2008.  A true and correct copy of the letter from Kate Berry,

8  paralegal at Relman & Dane, PLLC, forwarding said motion and attachments, along with the

9  date stamped received by Cholakian & Associates on March 12, 2008, is attached hereto as

10  Exhibit "B."

11      5.  Plaintiffs did not fax, email, or personally deliver by courier this motion and all

12  attachments on the same day that it was purportedly filed on March 6, 2008.

13      6.  Therefore, SFHA could not have filed this opposition by March 10, 2008 as

14  contemplated by Civil L.R. 7-11(b) and Fed.R.Civ.P. Rule 6(a).

15      7.  SFHA diligently filed this Opposition upon receipt of the Plaintiffs' motion papers.

16      I declare under penalty of perjury under the laws of California that the foregoing is true

17  and correct, and that this declaration was executed on March 17, 2008.

18

19

20  _____

21                    Vivian Lerche, Esq.

22

23

24

25

26

27

28

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

2

DECLARATION OF VIVIAN L. LERCHE IN SUPPORT OF
DEFENDANT SAN FRANCISCO HOUSING AUTHORITY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ADMINISTRATIVE
RELIEF TO RELATE CASES

CASE NO. C-02-4540-CW

1  KEVIN K. CHOLAKIAN (S.B. # 103423)
2  VIVIAN L. LERCHE (S.B. # 149984)
   CHOLAKIAN & ASSOCIATES
3  A Professional Corporation
   5 Thomas Mellon Circle, Suite 105
4  San Francisco, CA 94134
   Telephone: (415) 467-8200
5  Facsimile: (415) 467-8206
6  kcholakian@cholakian.net
   vlerche@cholakian.net
7
   Attorneys for Defendant
8  SAN FRANCISCO HOUSING AUTHORITY

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA,          )   Case No.: C-02-4540-CW
                                       )
12                   Plaintiff,        )   **[PROPOSED] ORDER DENYING**
                                       )   **PLAINTIFF'S MOTION FOR**
13        vs.                          )   **ADMINISTRATIVE RELIEF TO**
                                       )   **RELATE CASES**
14  SAN FRANCISCO HOUSING              )
    AUTHORITY,                         )
15                                     )
                                       )
16                   Defendant.        )
                                       )
17  _____   )

18        UPON DUE CONSIDERATION of Plaintiffs' Motion for Administrative Relief to

19  Relate Cases, and Defendant's response thereto, it is hereby ORDERED that:

20        Plaintiff's Motion for Administrative Relief to relate *Khan v. San Francisco Housing*

21  *Authority*, Case No. C-07-6209 CRB to *United States of America v. San Francisco Housing*

22  *Authority*, Case No. C-02-4540-CW is hereby DENIED.

23
24  DATED:

25
26                                     By: _____
27                                         Honorable Claudia Wilken
                                           United States District Judge
28

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

| | |
|---|---|
| *Ahsan Khan et al. v. San Francisco Housing Authority* | **U.S. District Court, Northern District of California; Case No. CV 07-6209 MJJ** |

## PROOF OF SERVICE

I, the undersigned, hereby declare that I am a citizen of the United States, over the age of eighteen years and not a party to the within action. My business address is 5 Thomas Mellon Circle, Suite 105, San Francisco, California 94134. I am employed in the County of San Francisco where this service occurs. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U. S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served or caused to be served the within:

**DEFENDANT SAN FRANCISCO HOUSING AUTHORITY'S OPPOSITION TO PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF TO RELATE CASES; and DECLARATION OF VIVIAN L. LERCHE IN SUPPORT**

on the interested parties to this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

D. Scott Chang, SBN 146403
Mary J. Hahn*
John P. Relman*
Relman & Dane, PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036-2456
Telephone: (202) 728-1888 / Fax: (202) 728-0848
schang@relmanlaw.com

M. Julie Patino, SBN 250375
Ernest Saadiq Morris*
Adam J, Zapala, SBN 245748
Bay Area Legal Aid
2 West Santa Clara Street, 8th Floor
San Jose, CA 95113
Telephone: (408) 283-3700 / Fax: (408) 283-3750
Jpatino@baylegal.org

Attorneys for **Plaintiffs**
AHSAN KHAN AND SALEHA KHAN, individually and on behalf of their minor children, IRFAN KHAN, ASIF KHAN, NOREEN KHAN, KAYNAT KHAN, LAIBA KHAN and BILAL KHAN, and RHEANNA KHAN, individually

| | |
|---|---|
| ☒ | (BY MAIL) I sealed the envelope(s), with postage thereon fully prepaid, and on the date below, following ordinary business practices, I placed it for collection and mailing in the United States Postal Service, in San Francisco, California. |
| ☐ | (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| ☒ | (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this court at whose direction this service is made. |

Executed on **March 17, 2008**, at San Francisco, California.

Jose Sarmiento

LAW OFFICES OF
CHOLAKIAN & ASSOCIATES
A PROFESSIONAL CORPORATION
5 THOMAS MELLON CIRCLE, SUITE 105
SAN FRANCISCO, CALIFORNIA 94134

Exhibit A

RELMAN & DANE PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

*SFHA/ KHAN*
**RECEIVED**
MAR 1 2 2008
BY: 800 022
KC/ VL

March 6, 2008

Kevin K. Cholakian
Vivian Leung Lerche
Cholakian & Associates
5 Thomas Mellon Circle, Suite 105
San Francisco, CA 94134

Re: Ahsan Khan, et al. v. SFHA, C 07-6209 CRB

Dear Counsel,

Please find enclosed Plaintiffs' Motion for Administrative Relief to Relate Cases, Declaration of D. Scott Chang in Support of Plaintiffs' Motion for Administrative Relief to Relate Cases, and Plaintiffs' Proposed Order Granting Plaintiffs' Motion for Administrative Relief to Relate Cases, filed March 6, 2008.

If you have any questions, please feel free to contact me.

Sincerely,

Kate Berry
Paralegal

Encl.

1  D. SCOTT CHANG, SBN 146403
   MARY J. HAHN*
2  JOHN P. RELMAN*
   RELMAN & DANE, PLLC
3  1225 19th Street, N.W., Suite 600
   Washington, DC 20036-2456
4  Telephone: (202) 728-1888
   Facsimile: (202) 728-0848
5  schang@relmanlaw.com
   mhahn@relmanlaw.com
6  jrelman@relmanlaw.com

7  Attorneys for Plaintiffs
8  AHSAN KAHN, et al.

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                            )       Case No.: C-02-4540-CW
                              )
12  UNITED STATES OF AMERICA, )
                              )
13          Plaintiff,        )       PLAINTIFFS' MOTION FOR
                              )       ADMINISTRATIVE RELIEF TO
14      vs.                   )       RELATE CASES
                              )
15  SAN FRANCISCO HOUSING     )
    AUTHORITY,                )
16                            )
17          Defendant.        )
                              )
18                            )

19          Pursuant to Civil Local Rule 3-12, Plaintiffs respectfully submit this Motion for

20  Administrative Relief to find that *Khan v. San Francisco Housing Authority*, Case No. C- 07-

21  6209-CRB, is related to another case that had been pending in this Court, *United States of*

22  *America v. San Francisco Housing Authority*, Case No. C-04-4540-CW ("*US v. SFHA*"). These

23  cases involve the same Defendant, the same property, and virtually identical allegations that the

24  SFHA violated the Fair Housing Act for its ongoing failure to investigate or respond to

25  complaints of harassment and intimidation against tenants of Middle Eastern national origin

26  and/or Islamic faith. Indeed, when the acts of harassment took place in *Khan*, SFHA was still

27  subject to the Consent Decree issued by this Court as a result of the settlement in *U.S. v. SFHA*.

28

## FACTUAL AND PROCEDURAL BACKGROUND

*1.    Khan v. San Francisco Housing Authority*

In this case, Plaintiffs are of the Islamic faith, and Pakistan is their country of origin. They dress in traditional Muslim attire, and Mr. and Mrs. Khan speak limited English.    In 2005, the Khans moved into Potrero Terrace, an apartment building owned and managed by Defendant SFHA. The Khans quickly became the targets of discriminatory harassment by their neighbors because of their religion and national origin.  This harassment included derogatory comments characterizing them as the terrorist Osama bin Laden and a threatening image spray-painted outside their door depicting a gun pointed at the head of a man dressed in Muslim attire.

In August 2005, the Khans' apartment was broken into.  This was no ordinary burglary. The perpetrator left clear signs of animus against the Khans' religion and national origin.  Their Pakistani passports were defiled, their traditional clothing was torn to shreds, and their Qur'an was desecrated, thrust into a tin of flour.

The Khans, by themselves and through their counsel, immediately and repeatedly informed Defendant SFHA about the hate-motivated nature of this break-in, and therefore qualified for a priority transfer, and requested to be transferred from the unit.  Despite this notice, Defendant SFHA refused the Khans' transfer request for months.  Defendant failed to properly secure the apartment or protect the Khans from further acts of vandalism.  As a result, the apartment was repeatedly ransacked after the initial break-in.  The Khan family, fearing for their safety, never returned to live in the apartment.

*2.    Previous Related Cases.*

In 1998, six Vietnamese-American families brought a class action suit against SFHA alleging that the Housing Authority failed to protect them from national origin-based violence at SFHA apartment complexes.  *Truong v. San Francisco Housing Authority*, Case No. C-98-0956-CW.  *Truong* involved allegations that the San Francisco Housing Authority violated the Fair Housing Act by its ongoing failure to adequately investigate and respond to complaints of racial and other harassment among its tenants.  In 1999, the parties settled the case, and this Court issued a consent decree requiring that SFHA hire a court-appointed monitor for three years to

1   investigate complaints of racial discrimination and harassment and recommend reforms to the

2   agency, among other remedies.

3       Just three years later, in 2002, the United States Department of Justice (DOJ) filed a

4   lawsuit alleging that SFHA engaged in a pattern and practice of discrimination by failing to take

5   steps to protect its residents from discriminatory harassment and intimidation based on race,

6   color, national origin, and religion, including harassment of tenants of the Islamic faith. Several

7   Muslim residents of SFHA apartment complexes who were victims of harassment and violence

8   based on religion and national origin later intervened in the DOJ action. *U.S. v. SFHA*, Case No.

9   C-02-4540-CW.

10      *U.S. v. SFHA* was originally assigned to the Honorable Judge James Larson. The

11  United States filed a notice of related case to *Truong v. San Francisco Housing Authority*, Case

12  No. C-98-0956-CW, and this Court found that the cases were related, and the case was

13  reassigned to the Honorable Claudia Wilken. *U.S. v. SFHA*, Case No. C-02-4540-CW (Order

14  Relating Case, R. 6, 10/18/2002.)

15      In *U.S. v. SFHA*, the Government and the intervenors alleged that for years, Muslim

16  tenants of various national origins were subjected to harassment and intimidation by other SFHA

17  tenants based on their religion and national origin. The harassment included verbal assaults with

18  ethnic slurs and, similar to the Khan family, targeted burglaries of their apartments and other

19  property. The Muslim tenants, like the Khans, repeatedly reported the harassment and

20  intimidation to SFHA, but SFHA failed to take any effective corrective action, just as it failed to

21  respond to the Khans' complaints of intimidation and harassment. The Muslim families, like

22  the Khans, requested priority transfers to escape the hate-motivated harassment and intimidation

23  but, as with the Khans, SFHA ignored these requests for months, leaving the tenants unsafe in

24  their own homes.

25      In January 2004, after extensive investigation and discovery, the United States, the

26  Muslim tenants and SFHA entered into a Consent Decree requiring SFHA to make numerous

27  changes to its policies and practices. Potrero Terrace was one of the properties subject to terms

28  of the Consent Decree. The Consent Decree incorporated SFHA's already existing civil rights

1  policy regarding the reporting and investigation of civil rights complaints and set forth strict

2  time periods for taking action. The Consent Decree required that SFHA process transfer

3  applications for tenants complaining of civil rights violations within ten days. It also required

4  (1) increased security patrols at certain buildings, including Potrero Terrace, with the specific

5  purpose of deterring racial, ethnic, or religious violence and harassment; (2) mandatory civil

6  rights training of SFHA personnel, including all employees of the Department of Eligibility; (3)

7  referral of all claims of racial or religion-based harassment to the SFHA Office of Fair Housing,

8  which is responsible for investigating all civil rights complaints; and (4) notice to all employees

9  of the Department of Eligibility and any employee who has regular contact with tenants of their

10  obligations under the Consent Decree. This Consent Decree remained in effect for three years

11  until January 2007. *U.S. v. SFHA* (Consent Decree, R. 248, 1/16/2004.)

## ARGUMENT

13  *Khan v. SFHA* is clearly related to *U.S. v. SFHA*. In determining whether a case is

14  related, the Court considers two factors:

> (1)  Whether the actions concern substantially the same parties, property, transaction
>      or event; and
>
> (2)  Whether it appears likely that there will be an unduly burdensome duplication of
>      labor and expense or conflicting results if the cases are conducted before different
>      Judges.

20  Civ. Local Rule 3-12(a).

21  These factors are easily fulfilled here. Both cases involve the same Defendant, the same

22  subject property, and the same allegations that Defendant violated the Fair Housing Act because

23  of its ongoing failure to investigate and respond to complaints of harassment and intimidation

24  among its tenants. The harassment is based on the same protected characteristics – national

25  origin and Islamic faith – in both cases.

26  Moreover, the Consent Decree issued by this Court as a result of a settlement in *U.S. v.*

27  *SFHA* remained in full effect from January 2004 through January 2007. The acts of harassment

28  in *Khan* took place in August 2005, well within the effective period of the Consent Decree.

1   Plaintiffs have alleged that SFHA failed to follow the terms and conditions of the Consent

2   Decree when confronted with their complaints of harassment on the basis of their religion and

3   national origin.

4          Given this Court's experience in presiding over two previous cases involving similar

5   allegations that the San Francisco Housing Authority violated the Fair Housing Act, and the fact

6   that this Court's Consent Decree is implicated by the allegations in the present case, there will

7   likely be an unduly burdensome duplication of labor and expense if the cases are conducted

8   before different judges, and assignment to a single judge is likely to conserve judicial resources

9   and promote efficient determination of the action.

10                              CONCLUSION

11         For the above reasons, Plaintiffs respectfully request that *Khan* be deemed related to

12  *United States v. San Francisco Housing Authority*, Case No. C-02-4540-CW, and be reassigned

13  to the Honorable Claudia Wilken for all further proceedings.

14

15  Dated: March 6, 2008                          Respectfully submitted,

16

17                                          s/ D. Scott Chang
18                                          D. Scott Chang
                                            Mary J. Hahn*
19                                          John P. Relman*
                                            Relman & Dane, PLLC
20                                          1225 19th Street, N.W., Suite 600
21                                          Washington, DC 20036-2456

22                                          Julie Patiño
23                                          Ernest Morris*
                                            Adam J. Zapala
24                                          Bay Area Legal Aid
                                            2 West Santa Clara Street, 8th Floor
25                                          San Jose, CA 95113
26
                                            Attorneys for Plaintiffs
27
28                                          *admitted *pro hac vice*

---
                                5
        PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF TO RELATE CASES

CERTIFICATE OF SERVICE
NORTHERN DISTRICT OF CALIFORNIA

I hereby certify that on March 6, 2008, a copy of the foregoing Plaintiffs' Motion for Administrative Relief to Relate Cases was electronically filed and served upon the following by mail:

Kevin K. Cholakian
Vivian Leung Lerche
**Cholakian & Associates**
5 Thomas Mellon Circle, Suite 105
San Francisco, CA 94134
Telephone: 415-467-8200

Steven Rosenbaum
**U.S. Department of Justice**
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Telephone: 202-305-1077

Minouche Kandel
**Bay Area Legal Aid**
50 Fell Street, 1st Floor
San Francisco, CA 94102
Telephone: 415-982-1300

/s/ D. Scott Chang
D. Scott Chang

PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF TO RELATE CASES

1  D. SCOTT CHANG, SBN 146403
   MARY J. HAHN*
2  JOHN P. RELMAN*
   RELMAN & DANE, PLLC
3  1225 19th Street, N.W., Suite 600
   Washington, DC 20036-2456
4  Telephone: (202) 728-1888
   Facsimile: (202) 728-0848
5  schang@relmanlaw.com
   mhahn@relmanlaw.com
6  jrelman@relmanlaw.com

7  Attorneys for Plaintiffs
8  AHSAN KAHN, et al.

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11 UNITED STATES OF AMERICA,        )    Case No.: C-02-4540-CW
                                    )
12              Plaintiff,          )    DECLARATION OF D. SCOTT
                                    )    CHANG IN SUPPORT OF
13      vs.                         )    PLAINTIFFS' MOTION FOR
                                    )    ADMINISTRATIVE RELIEF TO
14 SAN FRANCISCO HOUSING            )    RELATE CASES
   AUTHORITY,                       )
15                                  )
                                    )
16              Defendant.          )
                                    )
17 _____)

18      I, D. Scott Chang, am one of the attorneys for Plaintiffs in *Khan v. San Francisco*

19 *Housing Authority*, Case No. C- 07-6209-CRB, and I have knowledge of the facts contained

20 herein. I submit this Declaration pursuant to Civil Local Rule 7.11(a).

21      1.      Prior to filing the attached motion for administrative relief, I telephoned and

22 spoke with Vivian Lerche, counsel for Defendant San Francisco Housing Authority, requesting

23 that Defendant stipulate to Plaintiffs' request that *Khan* be deemed related to *United States v.*

24 *San Francisco Housing Authority*, Case No. C-04-4540-CW.

25      2.      On February 21, 2008, Jose Sarmiento, Ms. Lerche's legal secretary, sent an

26 email response on behalf of Ms. Lerche. In his email, Mr. Sarmiento indicated that Defendant's

27 counsel would not stipulate that the two cases are related. A true and correct copy of Mr.

28 Sarmiento's email is attached as Exhibit 1 to this declaration.

---

1       I hereby declare under penalty of perjury that the forgoing is true and correct to the best

2 of my knowledge.

3

4 Executed on:   March 6, 2008           /s/ D. Scott Chang

5                                                     D. Scott Chang

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D. SCOTT CHANG DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF

CERTIFICATE OF SERVICE
NORTHERN DISTRICT OF CALIFORNIA

I hereby certify that on March 6, 2008, a copy of the foregoing D. Scott Declaration in

Support of Plaintiffs' Motion for Administrative Relief to relate Cases was electronically filed

and served upon the following by mail:

Kevin K. Cholakian                          Steven Rosenbaum
Vivian Leung Lerche                         **U.S. Department of Justice**
**Cholakian & Associates**                  950 Pennsylvania Avenue, N.W.
5 Thomas Mellon Circle, Suite 105           Washington, DC 20530
San Francisco, CA 94134                     Telephone: 202-305-1077
Telephone: 415-467-8200

Minouche Kandel
**Bay Area Legal Aid**
50 Fell Street, 1st Floor
San Francisco, CA 94102
Telephone: 415-982-1300

                                   /s/ D. Scott Chang
                                   D. Scott Chang

D. SCOTT CHANG DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF

# EXHIBIT
# 1

Scott Chang

| | |
|---|---|
| From: | Jose Sarmiento [jsarmiento@cholakian.net] |
| Sent: | Thursday, February 21, 2008 12:31 PM |
| To: | Scott Chang |
| Cc: | Vivian Lerche |
| Subject: | Ahsan Khan et al. v. San Francisco Housing Authority (our file #300 022) |

Good Morning Mr. Chang:

I have been asked to inform you that we have decided that it would not
be in our client's best interest to stipulate that the DOJ case is
related as we do not agree with that position.

If you need to discuss further, Ms. Lerche will be back in the office on
Monday to discuss above, or you can e-mail her @ vlerche@cholakian.net.
Thank you for your attention.


Jose Sarmiento, Legal Secretary
CHOLAKIAN & ASSOCIATES
5 Thomas Mellon Circle, Suite 105
San Francisco, CA 94134
Tel: 415/467-8200, ext. 211
Fax: 415/467-8206
Email: jsarmiento@cholakian.net

The information contained in this e-mail message may be privileged,
confidential and protected from disclosure. If you are not the intended
recipient, any dissemination, distribution or copying is strictly
prohibited. If you think you have received this e-mail message in error,
please e-mail the sender at jsarmiento@cholakian.net.

1   D. SCOTT CHANG, SBN 146403
    MARY J. HAHN*
2   JOHN P. RELMAN*
    RELMAN & DANE, PLLC
3   1225 19th Street, N.W., Suite 600
    Washington, DC 20036-2456
4   Telephone: (202) 728-1888
    Facsimile: (202) 728-0848
5   schang@relmanlaw.com
    mhahn@relmanlaw.com
6   jrelman@relmanlaw.com

7   Attorneys for Plaintiffs
8   AHSAN KAHN, et al.

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA,        )   Case No.: C-02-4540-CW
                                     )
12                                   )   **PLAINTIFFS' PROPOSED ORDER**
             Plaintiff,              )   **GRANTING PLAINTIFFS' MOTION**
13                                   )   **FOR ADMINISTRATIVE RELIEF TO**
        vs.                          )   **RELATE CASES**
14                                   )
    SAN FRANCISCO HOUSING            )
15  AUTHORITY,                       )
                                     )
16           Defendant.              )
                                     )
17  _____ )

18       Pursuant to Civil Local Rule 7.11(a), Plaintiffs respectfully submit the attached Proposed

19  Order granting Plaintiffs' request that *Khan v. San Francisco Housing Authority*, Case No. C-

20  07-6209 CRB, be found to be related to *United States v. San Francisco Housing Authority*, Case

21  No. C-04-4540-CW, and reassigned to the Honorable Claudia Wilken.

22

23

24

25

26

27

28

1    Dated: March 6, 2008                    Respectfully submitted,

2

3                                    /s/ D. Scott Chang
                                     D. Scott Chang
4                                    Mary J. Hahn*
                                     John P. Relman*
5                                    Relman & Dane, PLLC
                                     1225 19th Street, N.W., Suite 600
6                                    Washington, DC 20036-2456
7

8                                    Julie Patiño
                                     Ernest Morris*
9                                    Adam J. Zapala
                                     Bay Area Legal Aid
10                                   2 West Santa Clara Street, 8th Floor
                                     San Jose, CA  95113
11

12                                   Attorneys for Plaintiffs

13                                   *admitted pro hac vice

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED ORDER GRANTING PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF

1
2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

3   UNITED STATES OF AMERICA,                )     Case No.: 4:02-cv-04540-CW
4                          Plaintiff,        )     **ORDER RELATING CASE**
5          vs.                               )
6   SAN FRANCISCO HOUSING                    )
    AUTHORITY,                               )
7                                            )
8                          Defendant.        )
                                             )

9

10   UPON DUE CONSIDERATION of Plaintiffs' Motion for Administrative Relief to

11   Relate Cases, and Defendant's response thereto, it is hereby ORDERED that:

12       *Khan v. San Francisco Housing Authority*, Case No. C- 07-6209 CRB is related to

13   above-captioned case and *Khan* shall be reassigned to the Honorable Claudia Wilken for all

14   further proceedings.

15

16

17   Entered this _____ day of March 2008.

18

19                                           _____
20                                           Claudia Wilken
                                             United States District Judge
21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE
NORTHERN DISTRICT OF CALIFORNIA

I hereby certify that on March 6, 2008, a copy of the foregoing Plaintiffs' Proposed

Order Granting Plaintiffs' Motion for Administrative Relief was electronically filed and served

upon the following by mail:

Kevin K. Cholakian
Vivian Leung Lerche
**Cholakian & Associates**
5 Thomas Mellon Circle, Suite 105
San Francisco, CA 94134
Telephone: 415-467-8200

Steven Rosenbaum
**U.S. Department of Justice**
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Telephone: 202-305-1077

Minouche Kandel
**Bay Area Legal Aid**
50 Fell Street, 1st Floor
San Francisco, CA 94102
Telephone: 415-982-1300

                                        /s/ D. Scott Chang
                                        D. Scott Chang

PROPOSED ORDER GRANTING PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF

Exhibit B



Received

JUL 2 1 2006

SFHA Executive Office

*Gregg Fortney/Donna Martin/Buddy Choy*

Gregg Fortner, Executive Director
San Francisco Housing Authority
440 Turk St.
San Francisco, CA 94102

U.S. Department of Housing and Urban Development
Office of Fair Housing and Equal Opportunity – Region IX
600 Harrison Street, 3rd Floor
San Francisco, California 94107
Voice: (800) 347-3739 (415) 489-6400
TTY: (415) 489-6564 Fax: (415) 489-6560
www.hud.gov
espanol.hud.gov

JUL 1 9 2006

Office of General Counsel

Complainant:  Khan, Ahsan

v.

Respondent:  San Francisco Housing Authority

Case Numbers:  09-06-0866-8 (Title VIII)
09-06-0866-6 (Title VI)

## DETERMINATION OF NO REASONABLE CAUSE
## LETTER OF FINDING OF COMPLIANCE

The Department of Housing and Urban Development (HUD) administers the Fair Housing Act
(the Act).  The Department has completed its investigation of the subject complaint which was
filed under the Act.  Informal efforts to resolve the case during the investigation were
unsuccessful.

Based on the evidence obtained during the investigation, the Department has determined that
reasonable cause does not exist to believe that a discriminatory housing practice has occurred. The
Department has also completed its investigation of the complaint filed under Title VI of the Civil
Rights Act of 1964 and found Respondent to be in compliance with Title VI requirements.
Accordingly, the above-referenced complaint is hereby dismissed.  A summary of the evidence on
which this determination is based is enclosed with this letter.

Please be advised that our determination with Title VI pertains only to the specific matters
addressed in the subject complaint investigation.  Should other jurisdictional complaints be filed
against the respondent, the respondent will again be subject to a Title VI investigation.  This
dismissal does not prevent the complainant from filing another complaint with HUD based on
newly discovered or previously unavailable information, provided the one-year time limit for filing
a complaint has not expired.

Notwithstanding this dismissal by HUD, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that this dismissal be publicly disclosed unless the complainant or the respondent requests that no such release be made. Such request must be made by the complainant or the respondent within thirty (30) days of receipt of this determination to the Regional Office of Fair Housing and Equal Opportunity at the address given below. Notwithstanding such request by the complainant or the respondent the fact of this dismissal, including the names of all parties, is public information and is available upon request.

The Final Investigative Report on this case is available by writing to me at the U. S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity, 600 Harrison Street, 3rd Floor, San Francisco, CA 94107-1387.

On behalf of the Department of
Housing and Urban Development

7/18/06
Date

Charles E. Hauptman, Regional Director
Office of Fair Housing and
Equal Opportunity (FHEO)

Enclosure

DETERMINATION OF NO REASONABLE CAUSE (Title VIII)
LETTER OF FINDINGS OF COMPLIANCE (Title VI)

CASE NAME:  Khan, Ahsan v. San Francisco Housing Authority

CASE NUMBERS:    09-06-0866-8 (Title VIII)
                 09-06-0866-6 (Title VI)

I.     JURISDICTION

A complaint was filed with HUD on April 7, 2006 alleging that the Complainant(s) was
injured by a discriminatory act.  It is alleged that the Respondent(s) was responsible for:
discriminatory refusal to rent; discriminatory terms, conditions, privileges, or services
and facilities; and discriminatory acts under section 818 (coercion, etc.), and that the
Respondent's acts were based on national origin.  The most recent act is alleged to have
occurred on December 12, 2005.  The property is located at:  803 Missouri Street, San
Francisco, CA  94107.  The property in question is not exempt under the applicable
statutes.  If proven, the allegation(s) would constitute a violation of Sections 804a or f,
804b or f and 818 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair
Housing Act of 1988.

The Respondent(s) receives federal funding in the form of:

Public and Indian Housing

The Complainant has also alleged violations of Title VI of the 1964 Civil Rights Act by
the Respondent(s).

II.     COMPLAINANT'S ALLEGATIONS

In May of 2005 the Complainant who is Middle Eastern and his family moved into a unit
provided by the Respondent.  The Complainant alleged that a few weeks later, an
unknown person drew a picture of a man with a beard and a gun to his head on a wall
next to his front door, and Respondent's representative painted over the drawing.

The Complainant further alleged that on August 28, 2005 an unknown person or persons
burglarized his unit, stealing personal property and destroying traditional clothing worn
by him and his family, as well as destroying the family's passports.  Subsequently, he and
his family left the public housing unit on that date and moved to Santa Clara to stay with
friends, and he had the mail forwarded to his representative in San Jose.  The
Complainant maintained that Respondent did not secure his unit; therefore, over the next
month, unknown persons continued to burglarize the unit.

The Complainant stated that on August 29, 2005 he requested that the Respondent move
him and his family to another complex.  On September 8, 2005 the Respondent denied
the request stating that he was ineligible for a transfer because he had not lived in the unit
for at least a year.  However, after appealing the decision the Respondent placed him on a

priority transfer list in October of 2005. On November 14, 2005 he received a letter from the Respondent regarding an available unit. The letter was dated November 1, 2005 and was mailed to his public housing unit, which he had not occupied since August, which the Respondent knew. The Respondent also had the address for his representative to whom they had mailed other correspondence for him. The letter stated that he had three days to respond to the letter or he would be removed from the priority transfer list.

The Complainant also stated that on December 12, 2005 he received a letter from the Respondent stating that he owed rent from September through December of 2005 for the unit he had vacated due to the harassment. The Respondent was aware that he had not lived at the unit since August 28, 2005.

III.    RESPONDENT'S DEFENSES

The Respondent maintained that on or about March 2, 2005 the Complainant was offered a five-bedroom unit located at 1080 Palou Street. However, on March 10, 2005 he rejected the offer stating, "because I'm afraid it might not be a good area." Then, on or about March 31, 2005 he was transferred from 1080 Palou Street to 803 Missouri Street. On or about August 28, 2005 the Complainant reported to the Potrero Housing Development Property Office and to the San Francisco Police Department that his unit had been burglarized. Subsequently, on August 31, 2005 he submitted an application for transfer through the Protrero Housing Development Property Office; however, on September 8, 2005 his Application for Transfer was denied by the Eligibility Department.

The Respondent further maintained that on September 14, 2005 the Complainant spoke to the San Francisco Housing Authority (SFHA) office of Fair Housing/Investigations. The Complainant did not wish to have a face to face meeting to discuss the matter but requested a Section 8 Housing Voucher, and he was informed that they did not have any new Section 8 vouchers for distribution at that time.

The Respondent stated that on October 6, 2005 a Grievance Hearing was held to address the issue of the Complainant's denial for a transfer. Subsequently, on or about November 2, 2005 he was offered and refused a unit located at 2535 Sutter Street, #131, stating, "it's no different from where he is now." Finally, on or about January 11, 2006 the Complainant officially vacated his unit located at 803 Missouri Street and provided a forwarding address: 2 West Santa Clara Street, 8th Floor, San Jose, CA  95109 (P.O. Box 1840).

IV.    FINDINGS AND CONCLUSION

In May 2005 the Complainant moved to 803 Missouri Street, San Francisco, CA, a three story five-bedroom unit (Respondent converted three units into one) located in the Protrero Terrace/Annex. The unit is located at the end of a building that has six units adjacent to one another. Attached to the side of the building (exterior wall of the unit in which the Complainant resided) is a walkway to access the upper floor of the unit. Directly beneath the walkway is a 10 x 23¼ opening to a crawl space. At the back of the building is a boiler room (hot water heaters and electrical wiring) that serves the entire building. The back interior wall of the boiler room does not extend all the way to the

ceiling and provides access to a crawl space. During a visit to the property the boiler room door was padlocked and the 10 x 23¼ opening on the side of building was boarded up.

The Complainant maintained that on the day they moved to the subject property they overheard a tenant in another building state that Osama Bin Laden had come into their neighborhood, and near the end of July 2005 someone painted a picture of a man with a Topi (head wear) and a gun pointed at him near his front door. The Complainant stated that he contacted the Respondent that same day and they painted over the picture the next day. The Complainant further maintained that approximately two weeks later, someone painted "bad words" in the same place; however, he did not report this to the Respondent, he just ignored it. However, several weeks later when he observed maintenance staff painting another building he requested that they paint over the "bad words" and they did.

On August 28, 2005 burglars entered the Complainant's unit by kicking a hole in a wall near the steps on the lower level of the unit. Access to the back of this interior wall was gained through a crawl space; however, the investigation was unable to determine the point of entry to the crawl space. The following conflicting information was obtained during the investigation: 1) The police incident report states in part, "Officer Chantel who searched the downstairs area of the apartment noticed a 3 foot hole in a wall which lead to the crawl space. The crawl space was accessible from the outside of the apartment." 2) The Complainant maintained that he believes that whomever entered his unit came in through the boiler room door; however, he does not know if the boiler room door was locked or open at the time. He further maintained that an unidentified male from the Housing Authority came to look at the unit the day after the burglary and together they entered the crawl space, and this unidentified man stated that someone must have a key because the door to the boiler room was locked. 3) Respondent's carpenter stated that he keeps the boiler room locked, and the door was locked when he went to the building the day after the Complainant's unit was burglarized, therefore, no one could have entered the unit through the boiler room. 4) The Property Manager stated that the day after the Complainant's unit was burglarized she went to the unit and the Complainant took her to the side of the building and showed her the crawl space which was open. The Complainant told her that the burglar(s) had come into the unit through that crawl space.

The Complainant maintained that after his unit was burglarized they never stayed in the unit again. The first time they returned to the unit after the burglary someone had damaged the front door, and visits to the unit on several other occasions revealed that the unit had been entered repeatedly and additional personal property had been removed. The Complainant stated that with the exception of their clothing, dishes and some groceries, they did not remove the remainder of their belongings from the unit because they had no place to move them and they could not afford the moving or storage cost. During this time the Complainant remained in possession of the unit and did not return the keys to the Respondent until January 11, 2006.

Review of the Work Order Maintenance report for 803 Missouri Street shows that Respondent boarded up the Complainant's wall on August 29, 2005, and that from September 11, 2005 to June 8, 2006 the unit was boarded and re-boarded on numerous

occasions. Additionally, during an interview with the Complainant he maintained that the unidentified man from the Housing Authority stated that he would have the wall boarded up immediately.

The Complainant stated that when he arrived home and found that his unit had been burglarized he called the police and they responded. He told the police officer that he thought the burglary was a hate crime; however, the officer told him that it was not, and he also tried to tell the officer about the picture of the man that had been painted on his wall but the officer stated that it was gang related and not about him. The Complainant also stated that when he reported the burglary to the Respondent he tried to explain what had happened, their passports had been thrown in the front of the unit, his Koran had been thrown in flour and their traditional clothes were thrown around the unit; however, they didn't want to listen. Review of the police incident report revealed no mention of the burglary being a possible hate crime or of the Complainant alleging such, and during an interview with the Property Manager she stated that the Complainant did not mention anything that would cause her to believe that the burglary was a possible hate crime.

When the Complainant reported the burglary to the Respondent he requested a transfer and he was given an Application for Transfer. Review of the application notes the following reason provided for the transfer application: "HAD A ROBBERY ON 8-28-05. THEY BROKE THE FLOOR AND EVERYTHING." The application also states, ". . . if the applicant does not provide reasonable evidence of the immediate existence of a life threatening condition, this form will not be forwarded as a Priority transfer application. If approved for either a NON-PRIORITY or PRIORITY transfer, you must accept the unit offered or your name will be removed from the waiting list and you will not be eligible to apply for a transfer again for a period of twelve (12) months." During an interview with the Property Manager she stated that at the time the Complainant's application was sent to the district office they did not have a police report. However, she attempted an administrative transfer because it is the fastest and she did so because of the condition of the Complainant's unit and she believed that whomever broke into the unit had come in through the crawl space. Review of the Administrative Transfer Referral Form which the Manager sent to the district office on August 31, 2005 along with the Complainant's Application for Transfer states, "Unit was broken in to through crawl space underneath. Burglars kicked hole in wall and entered the unit."

In a notice sent to the Complainant dated September 8, 2005 the Complainant was notified that he was ineligible for transfer for the following reasons:
"[X] You do not meet the definition under Resident-Initiated Priority Transfer as defined in SFHA Admissions and Continued Occupancy Policy.
[X] You do not meet the definition under Resident-Initiated Non-Priority Transfer as defined in the SFHA Admission and Continued Occupancy Policy.
[X] You did not provide adequate information to qualify under the SFHA Transfer Policy.
[X] Other: You moved into 803 Missouri on March 17, 2005. You are not eligible for a transfer until March 2006."
The notice also notified the Complainant of his right to a grievance hearing.

Review of the Respondent's transfer policy set forth in their Admissions and Continued

Occupancy Policies approved on June 24, 2004 and October 1, 2005 states in part:
"1.     Priority Transfers - A priority transfer will be implemented when unit or building conditions pose an immediate threat to resident life, health, or safety. A priority transfer can be initiated by either the Authority or the resident, and must be documented and confirmed by the Authority or in a legal procedure.

a)     SFHA-Initiated Priority Transfer - Transfers that occur when a dwelling unit has been damaged by a fire, flood, or other causes to such a degree that the unit is not habitable and has such extensive damage that temporary relocation is not cost effective for SFHA. The Authority is not required to give prior notice in the event that a priority transfer must occur, and a tenant's refusal to comply with a SFHA-initiated priority transfer can be grounds for lease termination.

b)     Resident-Initiated Priority Transfer - Upon request by a resident, priority transfers may be used to alleviate verified medical problems of a life threatening nature, such as emergency medical and/or disability needs (including accessibility) that cannot be accommodated in the current dwelling unit, or to protect household members from an immediate threat to the life of a member from one of the following set of circumstances: . . .

(3)     A family member is a victim of a hate crime.

(a)     A hate crime is defined as a criminal act in which hostility or negative attitude toward, or prejudice against, any group or individual due to race, color, ethnicity/national origin, religion, gender, sexual orientation, or handicap is the motivating factor.

(b)     Indicators for hate crimes include, but are not limited to, the following: . . .

- The victim is a member of a racial, ethnic/national origin, gender, sexual orientation, or handicap group that is outnumbered by members of another group in that area where the victim lives and /or the incident occurs. . . . .

- Victims or witnesses perceive that the incident was motivated by bias. . . .

Placement on the priority transfer list requires third-party corroboration of all material facts supporting the application. Third-party corroboration includes, but is not limited to the following:

(a)     Police reports and investigation by SFHA staff, which includes discussion with attending police or other law enforcement . The evidence must substantially show that the family is in an immediate, life-threatening situation and that a priority transfer would substantially abate the problem. In regards to an Administrative Transfer the policy (October 1, 2005) states in part, "Administrative transfers will also include residents who are victims of fire or determined (by Housing Authority Staff) to live in substandard housing conditions."

On September 17, 2005 the Complainant's representative contacted Respondent and requested a hearing, and a hearing was scheduled for October 6, 2005. That same day Respondent's Director of Public Housing Operations decided that "After a review of the documents provided and collaborating statements made by the family, I am requesting that the eligibility department re-evaluate the transfer request and consider an approval of the transfer request." Such is noted in an Informal Settlement Hearing Summary of Discussion sent to the Complainant.

In a letter dated November 1, 2005 the Complainant was offered a unit located at 2535 Sutter Street, #131. The letter also states that "Failure to accept this unit, without "good cause," will result in your name being removed from the Priority Transfer Waiting List."

The Complainant maintained that the manager who managed the property where the aforementioned unit is located called and asked him if he would like to look at the unit. He noted that at that time he had not received written notification from Respondent of the availability of the unit. However, when he went to look at the unit the manager told him that the neighborhood he had lived in (unit at 803 Missouri Street) was not a good neighborhood and was not good for his children. He further maintained that although she did not state the same about the neighborhood in which the Sutter Street unit was located he got that feeling.

The Complainant rejected the unit at 2535 Sutter Street, #131. Review of Respondent's internal emails dated November 2, 2005 states, "Mr. Ahsan Khan, Client #070866 has decided after speaking with his family, he would not take unit 2535 Sutter Street #131. He stated that it's no different from where he is now," and "Mr. Khan rejected offer. He will be removed from the Priority Transfer waiting list."

During an interview with the Property Manager she stated that they waived the Complainant's rent for the months of September, October and November, 2005 because they were trying to transfer the Complainant and his family. However, when the Complainant refused the unit at 2535 Sutter Street, #131, they sent him a 14-day notice for non-payment of rent only for the period following the refusal of the unit. They eventually waived all of the Complainant's unpaid rent. Respondent provided the Complainant's Tenant Accounting report which shows that as of January 15, 2006 the Complainant had a zero balance.

Respondent's Lease Agreement states in part Under Termination By Tenant, "(A) Tenant may terminate this Lease at any time by giving at least (30) days' written notice to the SFHA. Notice will be deemed given when the SFHA is in receipt of Tenant's written notice. Tenant shall move out promptly and shall leave the Residence in as clean and good a condition as received at the start of occupancy, reasonable wear and tear accepted, and return all keys to the SFHA. All household members and other occupants shall completely vacate the Residence within the 30-day period. If Tenant does not give the full notice, Tenant shall be liable for Rent to the end of the notice period or to the date the Residence is re-Rented, whichever comes first."

Based upon the information set forth above there is no reasonable cause to believe that the Complainant was subjected to discriminatory housing practices as alleged in violation of Title VIII of the Fair Housing Act. The investigation revealed through documentation that Respondent had boarded up the point of entry into the Complainant's unit the day after the unit had been burglarized, and that the Respondent's initial denial of the Complainant's Application for Transfer complied with their transfer policies in that the Complainant failed to provide sufficient information to support his application. The investigation also revealed that when the Complainant was offered a unit he refused it. The Application for Transfer clearly states that units offered must be accepted or the tenant will be removed from the priority waiting list. Finally, based on the Lease Agreement, Respondent was in compliance with the Agreement when they continued to charge the Complainant rent although he had not occupied the unit after the burglary. However, Respondent waived all of the Complainant's unpaid rent once he returned the keys to the unit.

This Letter also constitutes the Department's Letter of Findings with respect to Title VI of the 1964 Civil Rights. A party to the complaint may request a review of this Letter of Findings by the Department's Assistant Secretary for the Office of Fair Housing and Equal Opportunity, room 5100, U.S. Department of Housing and Urban Development, 451 7th Street, SW, Washington, DC 20410. Such a request must contain a written statement of why the findings should be modified, and be mailed or delivered within thirty days of receipt of this Letter.

V.    ADDITIONAL INFORMATION

Notwithstanding this determination by HUD, the Fair Housing Act provides that the Complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the Respondent requests that no such release be made. Such request must be made by the Respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the Respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from: Charles E. Hauptman, Regional Director, Office of Fair Housing and Equal Opportunity, 600 Harrison Street, 3rd Floor, San Francisco, CA 94107-1387.


_____                          7/18/86
Charles E. Hauptman                                        Date
Regional Director
Office of Fair Housing and
Equal Opportunity