IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHSAN KHAN and SALEHA KHAN, individually and on behalf of their minor children, IRFAN KHAN, ASIF KHAN, NOREEN KHAN, KAYNAT KHAN, LAIBA KHAN and BILAL KHAN; and RHEANNA KHAN, individually,<br><br>    Plaintiffs,<br><br>   v.<br><br>SAN FRANCISCO HOUSING AUTHORITY,<br><br>    Defendant.<br>_____/ | No. C 07-6209 CW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Defendant San Francisco Housing Authority (SFHA) moves to dismiss Plaintiffs' third and fourth causes of action for violation of the California Fair Employment and Housing Act and the California Unruh Act, respectively. Plaintiffs Ahsan Khan, Saleha Khan, Irfan Khan, Asif Khan, Noreen Khan, Kaynat Khan, Laiba Khan, Bilal Khan and Rheanna Khan oppose Defendant's motion. The matter was heard on May 1, 2008. Having considered oral argument and all of the papers submitted by the parties, the Court denies Defendant's motion.

BACKGROUND

The following facts are alleged in the complaint. The Khans are a Muslim family of Pakistani origin. They dress in traditional Muslim clothing, and Mr. Khan speaks limited English. In 2005, the Khans moved into Potrero Terrace, an apartment building owned and managed by the SFHA. Shortly after they moved in, the Khans' neighbors began harassing and intimidating them because of their religion and national origin. The harassment included "derogatory comments characterizing them as the terrorist Osama bin Laden and a threatening image spray-painted outside their door depicting a gun pointed at the head of a man dressed in Muslim attire." Compl. ¶ 2.

On August 28, 2005, the Khans' apartment was broken into. The complaint describes the break-in as follows:

> This was no ordinary burglary. The perpetrator left clear signs of animus against the Khans' religion and national origin. Their Pakistani passports were defiled, their traditional clothing was torn to shreds, and their Qur'an was desecrated, thrust into a tin of flour.

Id. ¶ 3. Immediately after the burglary, the Khans informed the SFHA about the "hate-motivated nature" of the incident and requested to be transferred out of their home. Id. ¶ 4. However, the SFHA refused to give the Khans a priority transfer. This allegedly violated the terms of a consent decree, which was in effect at the time but has since expired, issued in the case of United States v. San Francisco Housing Authority, No. C 02-4540 CW (N.D. Cal.). In that case, the SFHA was alleged, among other things, to have failed to protect Muslim residents against

2

1  religious and national origin discrimination.

2       Following the burglary, the Khans feared for their safety and
3  sought emergency housing, first with friends, then in a cramped
4  apartment that was not sufficient to meet their needs.  Mr. Khan
5  requested that the SFHA make repairs that were necessary to make
6  the Khans' apartment secure and to deter future burglaries, but the
7  SFHA failed to do so.  As a result, the Khans' apartment "was
8  repeatedly ransacked," with the perpetrators "gutting the apartment
9  and carrying away the contents of their home, including furniture
10 and large appliances."  Compl. ¶¶ 5, 29.

11      Mr. Khan made numerous attempts to obtain a transfer from the
12 SFHA, but was met with bureaucratic indifference and denial that he
13 and his family had been victims of a hate crime.  After Mr. Khan
14 successfully grieved the initial denial of his transfer request, on
15 November 1, 2005, the SFHA offered to transfer the Khans to a new
16 apartment.  Mr. and Mrs. Khan immediately went to view the
17 apartment.  During their visit, they explained to the building
18 manager that they had been the victims of a hate crime at their
19 former residence, and were concerned about the safety of their
20 family.  The manager warned the Khans that they might face the same
21 problems at the new site.  Accordingly, the Khans decided not to
22 accept the apartment.

23      Because the SFHA did not offer to relocate the Khans to a safe
24 apartment, and because the Khans were otherwise not able to find
25 suitable housing, they "were forced to make the difficult choice of
26 temporarily breaking up their family, sending some of their
27 children to live with extended family in Pakistan."  Id. ¶ 8.  The
28

3

1  Khans "continue to live in substandard housing conditions, unable
2  to find safe and affordable housing that they would have enjoyed
3  had the SFHA complied with the Decree and taken reasonable steps to
4  protect [their] fair housing rights."  Id.
5      On April 7, 2006, Mr. and Mrs. Khan filed an administrative
6  complaint with the U.S. Department of Housing and Urban
7  Development.  The agency conducted an investigation and issued a
8  "no probable cause" determination on July 19, 2006, on the ground
9  that the Khans had failed to notify the SFHA that they had been
10 victims of a hate crime.  The Khans also sought administrative
11 relief by filing an administrative claim with the SFHA on or about
12 March 7, 2006.  The SFHA rejected their claim in a letter dated May
13 3, 2006.
14     The Khans filed this lawsuit on December 7, 2007.  They charge
15 the SFHA with violating the Fair Housing Act, 42 U.S.C. § 3601 et
16 seq., the Civil Rights Act, 42 U.S.C. § 1982, the California Fair
17 Employment and Housing Act (FEHA), Cal. Gov. Code § 12900 et seq.,
18 and the California Unruh Civil Rights Act, Cal. Civ. Code § 51 et
19 seq.  They seek an injunction directing the SFHA to "take all
20 affirmative steps necessary to remedy the effects of the illegal,
21 discriminatory conduct described herein and to prevent similar
22 occurrences in the future."  Id. at p. 21.  They also seek damages
23 as compensation for "the economic loss, humiliation, embarrassment
24 and emotional distress" they have suffered.  Id.

LEGAL STANDARD

26     A complaint must contain a "short and plain statement of the
27 claim showing that the pleader is entitled to relief."  Fed. R.

4

Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

## DISCUSSION

Defendant argues that Plaintiffs' claims under FEHA and the Unruh Act are barred by the statute of limitations. It maintains that both of these claims are governed by section 945.6 of the California Government Code. This statute is part of the Tort Claims Act (TCA), which requires would-be plaintiffs to file an administrative claim with the appropriate public entity before they can sue the entity on certain causes of action. It provides in part that

> any suit brought against a public entity on a cause of action <u>for which a claim is required to be presented</u> in accordance with [the TCA] must be commenced:
>
>   (1) If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail.
>
>   (2) If written notice is not given in accordance with Section 913, within two years from the accrual of the cause of action.

Cal Gov't Code § 945.6(a) (emphasis added). Section 913, in turn, imposes certain requirements on the form of notice the public

5

entity must provide when it rejects a claim. It states in part:

> If the claim is rejected in whole or in part, the notice . . . shall include a warning in substantially the following form:
>
> "WARNING
>
> "Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6.
>
> "You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Cal. Gov't Code. § 913(b).

When interpreting California law, this Court is bound by the decisions of the California Supreme Court. Absent such a decision, the Court must predict how the Supreme Court would decide the issue. In re Bartoni-Corsi Produce, Inc., 130 F.3d 857, 861 (9th Cir. 1997). When there is no convincing evidence that the Supreme Court would decide an issue differently, this Court is obliged to follow the decisions of the State's intermediate appellate courts. Id.

As noted above, Defendant argues that the six-month limitations period of section 945.6(a)(1) applies to Plaintiffs' FEHA claim. But as Plaintiffs point out, California courts have held that the TCA does not apply to claims brought under FEHA. See Garcia v. L.A. Unified School Dist., 173 Cal. App. 3d 701, 710-11 (1985); Snipes v. City of Bakersfield, 145 Cal. App. 3d 861, 868 (1983). This is because FEHA creates "special rules" for discrimination claims. Snipes, 145 Cal. App. 3d at 868. These

6

rules, which include specific limitations periods, "control over the general rules governing claims against governmental entities." Id.

Defendant does not refute Plaintiffs' argument that the TCA's six-month limitations period does not apply to FEHA claims, nor does it argue that Plaintiffs did not file their complaint within FEHA's limitations period.  Accordingly, Plaintiffs may proceed with this claim.

The legal framework governing Plaintiffs' Unruh Act claim is less clear.  Defendant argues that the six-month limitations period of section 945.6(a)(1) bars the claim.  It is true that when a plaintiff seeks to recover damages from a public entity under the Unruh Act "and that is his or her chief purpose," the plaintiff must comply with the TCA's procedures.  Gatto v. County of Sonoma, 98 Cal. App. 4th 744, 760 (2002).  However, the TCA does not apply to actions in which the primary relief sought against the government is equitable in nature and any request for monetary damages is merely incidental.  See id. at 760-63; Minsky v. City of Los Angeles, 11 Cal. 3d 113, 121 (1974) (non-pecuniary actions, such as those seeking injunctive, specific or declaratory relief, are not subject to the claims procedure); Loehr v. Ventura County Cmty. Coll. Dist., 147 Cal. App. 3d 1071, 1081 (1983) (where request for injunctive relief is "merely incidental or ancillary to a prayer for damages," the Minsky rule does not apply and the plaintiff must comply with the TCA's claims procedure); Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs., 840 F. Supp. 1328, 1358 (N.D. Cal. 1993) (the TCA's filing requirement "does not apply

to actions brought primarily for declaratory or injunctive relief, even though incidental money damages are sought").

Defendant argues that Plaintiffs seek a substantial amount of damages, and therefore their prayer for damages cannot be considered "incidental" to their prayer for injunctive relief. Nonetheless, it appears from the complaint that Plaintiffs seek primarily injunctive relief in the form of an order requiring the SFHA to "remedy the effects of the illegal discriminatory conduct described herein and to prevent similar occurrences in the future." Compl. at p. 21. The complaint lists this request for injunctive relief above the request for damages. Furthermore, this case is primarily about Plaintiffs' desire to be afforded safe housing free from discriminatory threats, intimidation and victimization, not about recovery for a pecuniary injury.

As this litigation progresses, it is possible that Plaintiffs' request for damages will come to dominate over their request for injunctive relief. In this event, Defendant may raise the statute of limitations issue again with respect to the damages claim. Nonetheless, at present it appears that Plaintiffs' request for damages is ancillary to their request to be provided with housing free from discriminatory intimidation. The Court therefore finds that the TCA's claims-presentation requirement does not apply.[1]

---

[1] The Court notes that the purpose of the TCA is "to provide [a] public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." City of San Jose v. Superior Court, 12 Cal. 3d 447, 455 (1974). This purpose was served here; Plaintiffs filed both a complaint with HUD and an administrative claim with Defendant.

8

Because the six-month limitations period in Government Code § 945.6(a) applies only to "cause[s] of action for which a claim is required to be presented," this limitations period also does not apply.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the third and fourth causes of action is DENIED.

IT IS SO ORDERED.

Dated: 5/8/08

_____
CLAUDIA WILKEN
United States District Judge